IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAUL VOLLMER and MARILYN VOLLMER, on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

v.                                                    Civil Action No.: 20-6979

XEROX CORPORATION,
PLAN ADMINISTRATOR COMMITTEE,
XEROX MEDICAL CARE PLAN FOR RETIRED
EMPLOYEES, XEROX DENTAL CARE PLAN,
and XEROX CORPORATION 1986 ENHANCED
EARLY RETIREMENT PROGRAM,

                    Defendants.

---

## CLASS ACTION COMPLAINT

Plaintiffs Paul Vollmer and Marilyn Vollmer bring this action under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of all

former Xerox employees who retired under the Xerox Corporation 1986 Enhanced Early

Retirement Program, set forth in a letter dated October 17, 1986, from D.M. Reid, Senior Vice

President, Personnel and Senior Staff Officer of Xerox, and who, along with their eligible

dependents, are entitled to lifetime, vested benefits under the Xerox Medical Care Plan for

Retired Employees and the Xerox Dental Care Plan on a noncontributory basis.

## PARTIES

1.      Plaintiff Paul Vollmer and his wife, Plaintiff Marilyn Vollmer, reside in Buckeye,

Arizona.

2.      Paul Vollmer was employed by Xerox Corporation ("Xerox") from 1964 to January 1987, when he elected to take retirement under the Xerox Corporation 1986 Enhanced Early Retirement Program ("ERP"), described in more detail below.  As a participant in the ERP, Mr. Vollmer was guaranteed vested benefits under the Old Plan (defined below) for both himself and his wife Plaintiff Marilyn Vollmer, who is a beneficiary of the ERP and the Old Plan.

3.      Defendant Xerox is a New York Corporation with its principal place of business in Norwalk, Connecticut.  On July 31, 2019, Xerox, which had been a publicly held company, became a direct, wholly-owned subsidiary of Xerox Holdings Corporation.

4.      Xerox is the sponsor of the Xerox Medical Care Plan for Retired Employees and the Xerox Dental Care Plan (collectively the "Old Plan") and the ERP and acted as a *de facto* fiduciary of those plans with a duty to communicate honestly with participants and to provide complete and accurate information about its benefit plans.

5.      Defendant Plan Administrator Committee is the Plan Administrator for the Old Plan and is a named fiduciary under ERISA §§ 3(16), (21), 29 U.S.C §§ 1002(16), (21).

6.      Defendant Xerox Corporation 1986 Enhanced Early Retirement Program (or "ERP") is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C §§ 1002(3).

7.      Defendants Xerox Medical Care Plan for Retired Employees and Xerox Dental Care Plan (collectively "the Old Plan") are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C §§ 1002(3).

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(e)(1) and (f).

9.      Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because

Defendants and, upon information and belief, numerous class members reside in this District.

## FACTS

### Xerox's Provision of Retiree Health Benefits Prior to the ERP

10.      Xerox has provided medical and dental benefits to retired employees and their

eligible dependents since at least 1975.

11.      Xerox established the Xerox Corporation Dental Care Plan effective January 1,

1975, to provide dental benefits for Xerox employees, retirees, and their eligible dependents.

12.      Article 7 of the 1975 Dental Care Plan document is entitled "Contributions."

Section 7.1 provides:

> Section 7.1  By the Company.  Subject to the provisions of Article 10, **the Company will contribute** to the Trustee of the Trust from time to time such sums as are approved by the Plan Administrator based upon **amounts necessary to pay all expenses of the Plan** as they fall due.

(Emphasis added).

13.      Section 7.2 of the 1975 Dental Care Plan document states:

> Section 7.2  Employee Contributions.  **Employees shall make no contributions to the Trust Fund**.

(Emphasis added).

14.      Section 3.2 of the 1975 Dental Care Plan document further states: "… each

Retiree and his Eligible Dependents, so long as they remain Eligible Dependents, shall be

Participants in the Plan and shall continue as Participants **until their respective deaths**."

(Emphasis added).

15.      Between October 1, 1975 and December 31, 1983, Xerox distributed a number of

booklets to employees that served as summary plan descriptions ("SPDs"), which summarized

3

Xerox medical care and dental care plans generally and set forth provisions of the plans that were

applicable to Xerox's retirees.

16.   An SPD entitled "Xerox Medical Care" dated October 1, 1975, provides:

**Retirement**   Retired employees with 10 or more years of service receive the
same benefits as active employees.

**Your cost.**

***Your Xerox Medical Plan costs you nothing.  It is a not a
contributory plan***; there are no deductions from your pay to defray
the costs.

Xerox assumes the full cost of the plan.  Benefits and
administration.

(Emphasis added).

17.   An SPD entitled "Dental Care" dated October 1, 1975, provides:

Xerox is directly involved—and here ***the Dental Care mirrors the Medical Plan.
There are no deductions from your pay for this Plan***.  …  Xerox provides the
money for benefits as well as administration….

(Emphasis added).

18.   An SPD entitled "Family Security Plan / Summary" dated July 1, 1977, provides:

**When you retire**

If your employment ends after you have reached your 55th birthday and your 10th
Xerox anniversary, here's how the Family Security Plan works for you:

*       *       *

Your medical and dental programs will provide benefits equivalent to
those you currently enjoy.  Xerox reimburses you for Medicare Part B
premiums when you become eligible for Medicare.  The same applies to
your spouse for life.

19.   The cover letter Xerox sent with the 1977 Family Security Plan / Summary SPD

instructs employees to "[b]e sure you have all the current booklets shown below" including the

"Medical Care (October 1, 1975)" and the "Dental Care (October 1, 1975)" SPDs, which, as previously noted, explain that the Medical Care and Dental Care plans are noncontributory.

20.    Xerox distributed a revised Family Security Plan / Summary SPD dated July 1, 1978, which provides:

> **When you retire**
> If your employment ends after you have reached your 55th birthday and your 10th Xerox anniversary, here's how the Family Security Plan works for you:
>
> *        *        *
>
> Your medical and dental programs will provide benefits equivalent to those you currently enjoy.  Xerox reimburses you for Medicare Part B premiums when you become eligible for Medicare.  The same applies to your spouse for life.

21.    The cover letter Xerox sent with the 1978 Family Security Plan / Summary SPD instructs employees to "[b]e sure you have all the current booklets shown below" including the "Medical Care (October 1, 1975)" and the "Dental Care (October 1, 1975)" SPDs, which, as previously noted, explain that the Medical Care and Dental Care plans are noncontributory.

22.    Xerox distributed a handbook entitled "You and Xerox" to employees on February 21, 1980.

23.    The 1980 You and Xerox handbook includes the 1980 SPD for the Medical Care Plan, which states:

> Employees in the Rochester area and *all Xerox retirees* are covered by Blue Cross/Blue Shield.  All other employees are covered by the Xerox Medical Plan administered by the Prudential Life Insurance Company.  …  ***Either way, Xerox bears the full cost of the Medical Plan, both premiums and administration.***  There are no deductions from your pay.

(Emphasis added).

24.    The 1980 You and Xerox handbook also includes the 1980 SPD for the Dental Care Plan, which states:

Xerox is directly involved in the cost of the plan—and here ***the Dental Care mirrors the Medical Plan. There are no deductions from your pay for this plan.*** ... Xerox provides the money for benefits as well as administration, handled for the company by the claims agent.

(Emphasis added).

25.    The 1980 You and Xerox handbook further provides:

**Your benefits when you retire.**

*          *          *

Your Medical Plan continues throughout your retirement, with substantially equivalent benefits.  (There is an offset for Medicare benefits when you become eligible for them; Xerox reimburses you for Medicare B premium payments.)

Your Dental Plan continues throughout your retirement.

### **Xerox Makes Changes to *Active* Employee Benefits Effective January 1, 1984**

26.    In 1983, Xerox issued a supplement to the Xerox and You handbook that explained changes Xerox was making to the Medical Care and Dental Care plans for ***active*** employees.

27.    The Xerox and You '83 Supplement described the changes for active employees as follows:

Beginning January 1, 1984, Xerox is changing the Medical and Dental Plans and adding a special Flexible Benefit Account to the benefit program.

The Medical and Dental Plan changes include:

- deductibles based on pay, which must be met before any benefits are paid

- partial rather than full reimbursement for hospital and surgical charges

- beginning in 1985, contributions toward the cost of covering your dependents.

28.    The Xerox and You '83 Supplement elaborated on the new contributions for active employees beginning in 1985 as follows:

6

**Contributions for Dependent Coverage in 1985**

Xerox has paid the full cost of medical coverage for you and your family over the years, even as those costs have risen dramatically. However, starting in January 1985, if there is an increase in the cost to provide this coverage for your dependents, you will be asked to pay half of the cost of this increase. As in the past, Xerox will pay the full cost of your *own* coverage, regardless of any increase.

*     *     *

If there are any increases in the cost of [Dental] coverage for your dependents in 1985, you'll be asked to share this additional expense with Xerox. Your own Dental coverage will continue to be provided at no cost to you.

29.     Xerox explained in the Xerox and You '83 Supplement that retirees would be excepted from these changes for active employees:

**Coverage for Retirees**

***Medical and Dental benefits for retired Xerox employees will remain essentially as they are now***.

(Emphasis added).

30.     Xerox set forth the terms of the "New Plan" for ***active*** employees in a 1984 Restatement of the Xerox Medical Care Plan document and a 1984 Restatement of the Xerox Dental Care Plan document.

31.     At the same time, Xerox set forth the "Old Plan" of benefits for ***retired*** employees in a new plan document entitled "The Xerox Medical and Dental Plans for Retired Employees," which states it is effective January 1, 1984. This 1984 Old Plan document carried forward the pre-1984 medical and dental benefits that Xerox already had in place for its retirees.

32.     According to the Plan Administrator Committee's denial of the Vollmers' administrative claim, the 1984 Old Plan Document "at the time served as the Plan's only plan document."

33.     The 1984 Old Plan Document states: "As a retiree, you and your spouse (at the time you retire) will participate in the Xerox Retiree Medical Plan and Dental Plan for the rest of your lives."

34.     The 1984 Old Plan Document further states: "***As a retiree, your medical plan benefits are essentially the same as the benefits you enjoyed as a Xerox employee***."  (Emphasis added).

35.     Unlike the new "Xerox and You" handbook that Xerox prepared for active employees in May 1984, the 1984 Old Plan Document for retirees did not contain any language in which Xerox purported to reserve a right to amend or terminate the plans in the future.

**Xerox Announces Changes to *Retiree* Health Benefits to be Effective January 1, 1989**

36.     In a letter dated April 9, 1986, Xerox announced to its salaried employees that it was making major changes to its benefit plans, including changes to its retiree medical and dental plans.

37.     The April 9, 1986 letter explained that employees who became eligible for retirement after January 1, 1989 would be in the "New Plan" upon retirement, whereas employees who became eligible for retirement before January 1, 1989 would be in the "Old Plan" upon retirement:

> For employees who become eligible for retirement after January 1, 1989--that is, those who reach age 55 with 10 years service--the retiree medical and dental plans will be similar to the plans in effect for active employees, including the $400 flexible benefit account.  Those who reach age 55 with 10 years of service before that date will be covered by the current retiree plans.

38.     In October 1986, Xerox prepared a booklet entitled "You and Xerox: 1986 New Health Care Plan for Retirees" that explained in greater detail the changes announced in 1986 to the retiree health benefits that would be in effect for all employees who become eligible to retire ***on or after*** January 1, 1989.

39.     The You and Xerox: 1986 New Health Care Plan for Retirees booklet explained that it did *not* apply to employees who were eligible to retire before January 1, 1989: "Those employees who have retired or who will become eligible to retire before January 1, 1989, will be covered by the medical and dental plans in effect prior to the 1986 changes, regardless of the actual date of retirement."

40.     In contrast to the 1984 Old Plan Document for retirees, which did not contain any language in which Xerox purported to reserve a right to amend or terminate the Old Plan for retirees in the future, the You and Xerox: 1986 New Health Care Plan for Retirees booklet stated "the Company, at its discretion, may at any time terminate any of these plans and policies or the statements made in this booklet."

## Xerox Announces the Enhanced Early Retirement Program

41.     Xerox's pension plan—the Retirement Income Guarantee Plan or RIGP— generally provided that Xerox employees would become eligible for early retirement on the first day of any month after they had reached age 55 and completed 10 years of service.

42.     In October 1986, Xerox announced an enhanced early retirement program (or "ERP") set forth in a letter and attachments from D.M. Reid, Xerox's Senior Vice President, Personnel and Senior Staff Officer, dated October 17, 1986.

43.     Upon information and belief, Xerox sent the identical letter to all former employee members of the class.

44.     In the October 17, 1986 letter, Mr. Reid announced that as part of Xerox's efforts to reduce the company's cost base, it was offering the ERP under which eligible employees could retire as early as age 50:

[W]e are amending Xerox' retirement plan to offer enhance early retirement benefits to salaried employees. Eligible employees are those covered by the Xerox Corporation Retirement Income Guarantee Plan (RIGP) and who will have reached age 50 and completed ten years of service by December 31, 1986.

45.     As set forth in the October 17, 1986 letter, the ERP included, for those eligible employees who elected, by December 19, 1986, to retire by January 31, 1987:

- an increased RIGP benefit that would be calculated with five years added to both the employee's age and years of service as of December 31, 1986, or actual retirement date, if earlier (with employees with 28 or more years of service getting an even greater increase).

- a benefit enhancement for some employees resulting from the fact that their profit-sharing plan account would not be used to fund the increase to the RIGP benefit, whereas otherwise the profit-sharing plan account would be used to fund the RIGP benefit.

- an additional Social Security supplement that would be provided to employees who are less than age 62 at retirement until they reach age 62.

- ***coverage under the retiree medical and dental plans in effect prior to the changes announced in early 1986.***

46.     The October 17, 1986 letter confirmed that an eligible employee who elects by December 19, 1986, to retire by January 31, 1987 "will be covered by the original retiree medical and dental plans … regardless of your age as of your retirement date." Otherwise, employees not 55 years old on December 31, 1988, will be covered by the plans described in the "*You and Xerox: 1986 Booklet, New Health Care Plan for Retirees.*"

47.     For more information, the October 17, 1986 letter referred Mr. Vollmer to three attachments to the letter: (i) estimates of his annual retirement benefits with and without the enhancements; (ii) a description of the retirement plan enhancements; and (iii) a series of questions and answers about the enhancements.

48.     Upon information and belief, all former employee members of the class also received as attachments to the October 17, 1986 letter: (i) estimates of his or her annual

retirement benefits with and without the enhancements, (ii) a  description of the retirement plan

enhancements applicable to all former employee class members, and (iii) a series of questions

and answers about the enhancements.

49.    The description of the retirement plan enhancements that was attached to the

October 17, 1986 letter, explained the enhancements and stated:

> **Retiree Medical and Dental Coverage.**
> *If you elect by December 19, 1986, to retire by January 31, 1987, you will be*
> *covered by the original retiree medical and dental plans.  You will be covered by*
> *these plans, regardless of your age as of your retirement date.*
>
> If you do not elect retirement by December 19, 1986, coverage will be provided
> by either the original plans or the new plans announced earlier this year,
> depending on your age.  If you will be at least 55 years old on December 31,
> 1988, you will be covered by the original plans; otherwise, you will be covered by
> the plans described in the *You and Xerox*: 1986 Booklet, *New Health Care Plan*
> *for Retirees*.

(Emphasis added).

50.    The series of questions and answers about the enhancements that was attached to

the October 17, 1986 letter, states in Q&A No. 25:

> Q.    What happens to my medical and dental coverage?
>
> A.    *If you elect by December 19, 1986 to retire by January 31, 1987, you will*
> *be covered by the original retiree medical and dental plans*.  The medical
> plan covers 100 percent of hospital and surgery costs and 80 percent of
> other expenses, except outpatient psychiatric, which is covered at 50
> percent.  The deductible—for non-hospital, non-surgical expenses only—
> is $100 for individuals, $200 for families.  The annual maximum out-of-
> pocket expense is 6% of pre-retirement pay.
>
> The dental plan coves 100 percent of basic services and 50 percent of
> major services.

(Emphasis added).

51.    The October 17, 1986 letter also referred Mr. Vollmer and the other former

employees in the class to "*You and Xerox*, pages 41-56, *You and Xerox Supplement '85*, and *The*

*Xerox Medical and Dental Plans for Retired Employees."* The reference to *"You and Xerox,* pages 41-56" is to the You and Xerox handbook prepared in May 1984, and pages 41-56 of that handbook exclusively concern Xerox's pension benefits. The reference to *"You and Xerox Supplement '85"* is to a supplement to the May 1984 handbook that was prepared in December 1985; the only provision in the supplement that pertains to health benefits addresses the enrollment options available to a Xerox employee who is married to another Xerox employee. The final reference to *"The Xerox Medical and Dental Plans for Retired Employees"* is to the 1984 Old Plan Document, addressed above, which set forth the "Old Plan" of benefits for *retired* employees effective January 1, 1984, and which carried forward the pre-1984 medical and dental benefits for retirees.

52.     The October 17, 1986 letter stated that Mr. Vollmer met the eligibility requirements for the ERP.

53.     The election form to participate in the ERP was enclosed with the October 17, 1986 letter. The election form defined the ERP as "the Enhanced Early Retirement Program set forth in the letter and attachments from D.M. Reid, dated October 17, 1986."

54.     A notice posted to Xerox's bulletin boards on October 17, 1986 explained that Xerox was offering the ERP to approximately 4,000 of Xerox's employees to reduce costs and was to be implemented through an amendment to the RIGP. This notice states in part:

> ALTHOUGH THE INCREASED BENEFITS WILL CONTINUE TO BE AVAILABLE TO ALL OF THE EMPLOYEES IN THE ELIGIBLE GROUP, THOSE WHO ELECT, BY DECEMBER 19, 1986, TO RETIRE BY JANUARY 31, 1987, MAY RECEIVE THE GREATEST BENEFIT UNDER THE AMENDED PLAN. FURTHER, SUCH EMPLOYEES WILL BE COVERED BY THE ORIGINAL MEDICAL AND DENTAL PLANS FOR RETIREES IN EFFECT BEFORE THE CHANGES ANNOUNCED EARLIER THIS YEAR.

55.     Subsequent information provided by Xerox confirmed that employees who elected to retire under the ERP would receive lifetime coverage under the Old Plan.

56.     "Supplemental Questions & Answers" provided to the employees eligible for the ERP at some point after October 17, 1986 and before November 26, 1986 (when the deadline for enrolling was pushed back to January 15, 1987), included the following statements:

1. **Clarification to Question #25**
   **What happens to my medical and dental coverage?**

   As indicated in the questions and answers you previously received, those employees who elect by December 19, 1986 to retire by January 31, 1987 will be covered by the original retiree medical and dental plans. In addition, employees who elect to retire after January 31, 1987, and who would be age 55 by December 31, 1988, will also be covered by the original medical and dental plans, even if they retire prior to reaching age 55. Those employees who do not elect to retire by December 19, 1986 to retire by January 31, 1987, and who would not reach age 55 by December 31, 1988 will be covered by the new retiree medical and dental plans even if they retire prior to reaching age 55.

12. **If a retiree dies, does the spouse have continued medical/dental coverage?**

   *The spouse has lifetime coverage under the retiree medical/dental plans.* Eligible unmarried dependents also have coverage to age 19 or age 23 if full-time students and dependent upon you for support. After January 1, 1987, under COBRA, such dependents would have extended coverage for up to 36 months at their expense when their coverage terminates.

(Emphasis added).

57.     In a memo dated October 27, 1986, the then-Plan Administrator of Xerox's benefit plans, Evan B. Dean, Xerox's Director, Benefits, notified employees who were eligible for the ERP that a consulting firm, Apex Advisory Services, would be conducting Retirement Planning Workshops in major metropolitan areas.

58.     Booklets prepared for these workshops (which were enclosed with the October 27, 1986 memo) explained the choice as to health care as follows:

**The Health Care Plan for Retirees**

In March 1986, Xerox announced a modification of its Health Care Plan for Retirees. ***The new plan applies to all employees who become eligible for retirement on or after January 1, 1989. Therefore, if you are less than 53 years of age on December 31, 1986, you will be covered under the 1986 Plan when you retire. Under the Enhanced Retirement Program, if you elect by December 19, 1986 to retire by January 31, 1987, you will be covered under the old plan. If you are in the 50 - 52 age group, this may have an impact on your decision to retirement [sic] now.***

**Health Care:  Pre-1986 Plans**

Under the old plan, you are reimbursed for 100% of the reasonable and customary, medically necessary hospital charges and (generally) 80% of all other medically necessary expenses, except for out-patient psychiatric care, which is covered at 50%. In addition, all covered expenses are paid when your out-of-pocket costs reach 6% of your pre-retirement pay. ***The plan is non-contributory after your retirement for you and your dependents.*** In addition, Xerox will reimburse you for the cost of Medicare Part B coverage, which coordinates with the Xerox plan.

The Dental Plan reimburses 100% of reasonable and customary charges for basic services and 50% of reasonable and customary expenses for major services.

**Health Care:  New Retiree Health Care Plans**

The new retiree Medical Plan will reimburse 80% of the reasonable and customary charges for all medically necessary expenses after the satisfaction of 50% of your pre-retirement deductible. Once your out-of-pocket expenses reach 4% of your pre-retirement pay or $4,000, covered expenses are reimbursed 100%. Out-patient psychiatric care is reimbursed at 50% and is not included in the out-of-pocket maximum.

The dental plan reimburses 100% of reasonable and customary charges for basic services and 50% of reasonable and customary expenses for major services.

***Future retirees will also be responsible for one-half the cost of the increase in providing medical and dental coverage for dependents.*** This premium is waived for retirees 65 and over. Future retirees will also be credited

with a $400 medical savings account.  There is no cash option.  If IRS regulations permit, unused balance will be carried forward to future years.

**Summary**

To summarize, *Xerox* has made a major enhancement to the Retirement Income Guarantee Plan, and *is providing two important incentives for early retirement: An increased RIPG benefit and the opportunity to be covered under the old Health Care Plan for Retirees*.  In some cases, these changes could effectively double your retirement benefits.  …

(Emphasis added).

59.     These booklets that Xerox enclosed with the October 27, 1986 memo, confirmed among other things, that (i) employees who elected the ERP would be covered under the Old Plan regardless of their age at retirement; and (ii) the Old Plan "is non-contributory after your retirement for you and your dependents."

60.     In a letter to the employees eligible for the ERP dated November 26, 1987, Xerox extended the deadline to participate in the ERP to January 15, 1987.  The enclosed enrollment form once again defined the ERP as the letter and attachments from D.M. Reid, dated October 17, 1986.

61.     On January 12, 1987, Mr. Vollmer elected to retire under the terms of the ERP.

62.     In a letter dated February 26, 1987, Bonnie Y. Rockcastle, Senior Benefits Specialist for Xerox, forwarded to Mr. Vollmer his retirement documents, including the 1984 Old Plan document.  The letter confirmed: "*Lifetime coverage is provided for both retiree and spouse*." (Emphasis added).

63.     None of the materials provided to employees eligible to elect retirement under the ERP stated that Xerox reserved the right to amend, suspend or terminate the retiree medical and dental benefits promised under the ERP.

**Xerox Adopts Restated Plan Documents that Do Not Apply to Class Members**

64.     Upon information and belief, effective January 1, 2003, Xerox adopted the 2003 Restatement of the Xerox Medical Care Plan for Retired Employees that was originally effective February 1, 1987.  A year later, the 2003 Restatement was amended to state that the original effective date of the Xerox Medical Care Plan for Retired Employees was January 1, 1976.

65.     Section 3.1 of the 2003 Restatement provides generally that "Retirees" and their eligible dependents shall become participants in the plan upon their retirement.  However, Section 2.39 defines "Retiree" to mean "an employee who is eligible to retire from the Company or one of its Subsidiaries on or before December 31, 1988, and who would have attained at least age fifty-five (55) and ten (10) years of service with the Company or one of the Subsidiaries on or before December 31, 1988."  This definition, on its face, did not include retirees such as Mr. Vollmer, who elected early retirement under the ERP and would not have reached age 55 by December 31, 1988.  As such, the 2003 Restatement did not apply to employees who retired under the ERP who instead continued to be covered under the terms of the 1984 Old Plan Document.

66.     Upon information and belief, effective January 1, 2016, Xerox adopted the 2016 Restatement of the Xerox Medical Care Plan for Retired Employees that was originally effective January 1, 1976.  The 2016 Restatement retained the definition of "Retiree" from the 2003 Restatement, and as such, the 2016 Restatement did not apply to employees who retired under the ERP and who continued to be covered under the terms of the 1984 Old Plan Document.

## Xerox's Imposition of Retiree Contributions Effective January 1, 2019

67. Despite the fact that the Vollmers and other class members, who retired under the ERP were promised under the express terms of the ERP lifetime retiree health coverage under the Old Plan that was non-contributory, in a letter dated October 3, 2018, Xerox informed the Vollmers and all other class members that effective January 1, 2019, they would be "required to share the premium cost of coverage under the Xerox Medical Care Plan for Retired Employees and the Xerox Dental Care Plan (together generally referred to as "Old Plan")." The letter further advised: "If you choose to remain covered by Old Plan, you will begin to pay 50% of the monthly premium costs...."

68. In separate letters sent to both Mr. and Mrs. Vollmer dated October 25, 2018, Xerox acknowledged that class members had not been required to pay a premium for their coverage under the Old Plan, but stated that beginning January 1, 2019 they would be required to pay a monthly premium in order to remain covered by the Old Plan. That letters advised Mr. and Mrs. Vollmer that their monthly cost for coverage under the Old Plan in 2019 would be $260.47 *each*, but further noted that:

> The benefits described herein are governed by the terms of plan documents or insurance policies. In the event of any difference between the information contained in this communication and the plan documents or insurance policies, the latter documents will control.

69. By letter dated November 9, 2018, the Vollmers filed a claim challenging Xerox's requirement that they pay contributions in order to participate in the Old Plan after January 1, 2019.

70. By letter dated April 22, 2019, a representative of the Plan Administrator Committee denied the claim.

71.     By letter dated May 8, 2019, the Vollmers timely appealed the denial of their claim.

72.     By letter dated October 6, 2019, the Vollmers timely supplemented their appeal with additional information.

73.     By letter dated December 4, 2019, the Director of Global Benefits, on behalf of the Plan Administrator Committee, denied the appeal.

74.     The December 4, 2019 letter stated that the Vollmers have the right to bring a civil action under Section 502(a) of ERISA, in Federal District Court in Monroe County, New York and must be commenced within the later of 180 days after the date of the Committee's determination of the appeal.  This time limitation was extended by the parties to November 16, 2020.

75.     The period of limitations and the forum selection provisions set forth in the December 4, 2019 letter do not appear in the 1984 Old Plan Document, which remains applicable to members of the class.

76.     Meanwhile, in late 2019, the Vollmers received letters from Xerox advising them that their monthly cost for coverage under the Old Plan in 2020 would be increased to $282.32 per month (for a total cost of $564.64 per month for both of them).

77.     In October, 2020, the Vollmers received notices from Xerox advising that their cost sharing in the Old Plan will increase to 60%.  They were later advised that to keep their coverage, they will be required to pay $313.40/month each, or a total of $626.80 per month.

78.     The notice states that if they are forced to cancel their Old Plan coverage, they will be unable to re-enroll in the Old Plan in the future and that if they fail to pay the required premium on time, their coverage will be terminated retroactively.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The requirements of Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) are satisfied with respect to the class defined herein.

80.     The class consists of the following:  All former Xerox employees who elected to retire pursuant to the ERP, set forth in a letter dated October 17, 1986, from D.M. Reid, Senior Vice President, Personnel and Senior Staff Officer of Xerox, and their spouses, who were receiving or eligible to receive retiree health benefits from Xerox as of December 31, 2018.

81.     Plaintiffs estimate that there are hundreds of class members.  The exact number and identification of these persons can be determined from the records maintained or controlled by Defendants.  The number of class members is so large that joinder of all its members is impracticable.

82.     Plaintiffs' claims involve common questions of law and fact that are capable of class-wide resolution, including whether, pursuant to the provisions of the ERP, class members are entitled to lifetime, non-contributory retiree healthcare benefits as set forth in the 1984 Old Plan Document.

83.     Plaintiffs' claims are typical of the class.  Their claims are brought under ERISA, which imposes a uniform standard of conduct on plan fiduciaries including a duty to uniformly administer and interpret common plan language.

84.     Plaintiffs will fairly and adequately protect the interests of the class.  They have no interests antagonistic to the claims of the class and have retained competent counsel.

85.     Feinstein Doyle Payne and Kravec, LLC, and Rupp Baase Pfalzgraf Cunningham LLC will fairly and adequately represent the interests of the class and satisfy the requirements of

Fed. R. Civ. P. 23(g) in that the firms have extensive experience litigating class actions and complex matters, particularly ERISA class actions in federal courts.  They have investigated these claims and reviewed plan documents, participant communications and other documents prior to filing this action and are advancing the costs of the litigation.

86.     Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of: (i) inconsistent adjudications that would establish incompatible standards of conduct for Defendants, and (ii) adjudications that would be dispositive of the interests of non-party class members or substantially impair such non-party class members' ability to protect their interests.

87.     Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive relief, declaratory relief or other relief with respect to the class as a whole.

88.     The common issues outlined above predominate over any issues affecting only individual members of the class and a class action is superior to any other method for the fair and efficient adjudication of this controversy.

89.     There are no difficulties likely to be encountered in the management of a class action in light of the uniform standard of conduct ERISA imposes on plan fiduciaries and the common plan language at issue.

## COUNT I
### Violation of Employee Benefit Plans Against the Plan Administrator Committee, the Old Plan and the ERP, Actionable under ERISA § 502(a)(1)(B)

90.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

91.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

92.     Pursuant to the terms of the ERP and 1984 Old Plan Document, Plaintiffs and members of the class are entitled to lifetime, non-contributory retiree health benefits.

93.     The requirement that Plaintiffs and class members would have to pay a monthly premium, beginning January 1, 2019, in order to retain their retiree healthcare coverage is a violation the terms of the ERP and the 1984 Old Plan Document that is actionable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## COUNT II
### Violation of Fiduciary and Statutory Duties Against
### Fiduciary Defendants, Actionable under ERISA § 502(a)(3)

94.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

95.     In the alternative, Plaintiffs bring this claim under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), which permits a plan participant or beneficiary to bring an action to enjoin any act or practice which violates ERISA or the terms of the Plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the Plan.

96.     Even where a plaintiff is not entitled to relief under the terms of the plan as written, ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), allows a participant or beneficiary to obtain other categories of equitable relief, including reformation of the terms of the plan to remedy false

or misleading information the Defendants provided, equitable estoppel to place the person entitled to its benefit in the same position in which he would have been had the representations been true, and a surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

97.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries…."

98.     In addition, the common law of trusts defines the general scope of a fiduciary's authority and responsibility.  In conveying information to an ERISA beneficiary, an ERISA fiduciary has an obligation to provide full and accurate information material to the plan beneficiaries regarding the administration of the plan.

99.     In the performance of its duties, an ERISA fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed.  This responsibility encompasses both an affirmative duty to inform when the trustee knows that silence might be harmful and a negative duty not to misinform.

100.    A breach of fiduciary duty claim may be premised on a misrepresentation *or* an omission.

101.    Xerox and the other plan fiduciaries were acting in a fiduciary capacity when they sent Plaintiffs and members of the class communications offering to those who elected early retirement under the ERP to lifetime coverage that was non-contributory under the retiree medical and dental plans in effect prior to the changes announced in early 1986.

102.    Xerox and the other plan fiduciaries breached their fiduciary duties in misrepresenting the terms of the Old Plan with respect to the reservation of the right to require contributions by participants who elected retirement under the ERP.

103.    Further, the Plan Administrators for the ERP and the Old Plan have disclosure obligations pursuant to the provisions of ERISA §§101(a), 102, and 104, 29 U.S.C. §§ 1021(a), 1022, 1024, requiring, *inter alia*, that it provide plan participants and beneficiaries such as Plaintiffs and members of the class, with an SPD that is sufficiently accurate and comprehensive to reasonably apprise them of their rights and obligations under the plan and that among other things, the circumstances which may result in the loss of benefits.

104.    These fiduciaries violated their disclosure obligations by failing timely to furnish employees eligible to retire pursuant to the ERP and their spouses with an SPD that apprised them that Xerox reserved the right to require contributions by participants who elected retirement under the ERP.

105.    Plaintiffs and members of the class suffered actual harm as a result of these violations of ERISA in that they forewent ongoing employment, future advancement and earnings, future contributions to their 401(k) accounts, future increases to the base of their RIGP and Social Security benefits and other financial consideration and benefits, in exchange for the benefits under the ERP, including lifetime, non-contributory retiree health benefits, which benefits they have now lost.

106.    Xerox benefitted from the election by Plaintiffs and members of the class to participate in the ERP, as it realized costs savings in the millions of dollars by not having to pay salaries, bonuses, 401(k) contributions, future increases to the base of their RIGP and Social Security benefits and other financial consideration and benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs on behalf of themselves and the class pray for relief as follows:

(a)     A certification of this action as a class action pursuant to Fed. R. Civ. P. 23 with the appointment of Plaintiffs as class representatives and the undersigned attorneys as counsel for the class;

(b)     A declaration that Plaintiffs and members of the class are entitled to receive non-contributory health benefits for life;

(c)     An order requiring Defendants to restore all non-contributory health benefits, refund all premiums paid for benefits from January 1, 2019 to present and to provide future non-contributory health benefits in the future;

(d)     An injunction or other equitable relief requiring Defendants to award to Plaintiffs and members of the class the benefits owed to them;

(e)     Disgorgement of any unjust enrichment;

(f)     An Order awarding appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including but not limited to:

- Reformation of the Old Plan document to clarify that participants who elected to retire under the ERP and their spouses are entitled to lifetime non-contributory health benefits;

- Surcharge to remedy the breach of trust committed by Defendants acting as fiduciaries and encompassing any violation of a duty imposed upon those fiduciaries;

24

(g)   Prejudgment interest on all amounts recovered at the maximum rate allowable by law;

(h)   An Order awarding the expenses of this suit, including costs, reasonable attorneys' fees and expert fees, and other disbursements;

(i)   In addition and/or in the alternative, all relief to which Plaintiff and the members of the class may be entitled under the facts and law, however denominated or labeled, pursuant to Fed. R. Civ. P. 54(c)or otherwise;

(j)   An Order awarding all other equitable and appropriate relief which the Court deems necessary and proper.

Respectfully submitted,

Dated: November 16, 2020

/s/ Anne Bowling
Anne K. Bowling Esquire
(NY ID No 4843579)
bowling@ruppbaase.com
**RUPP BAASE PFALZGRAF**
**CUNNINGHAM LLC**
1600 Liberty Building
424 Main St.
Buffalo, NY  14202
(716) 854-3400 (Tel)

Tybe A. Brett, Esquire
(PA ID No. 30064)
tbrett@fdpklaw.com
Joel R. Hurt, Esquire
(PA ID No. 85841)
jurt@fdpklaw.com
**FEINSTEIN DOYLE PAYNE**
**& KRAVEC, LLC**
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA  15219

**Attorneys for Plaintiffs**