UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL VOLLMER and
MARILYN VOLLMER, on behalf of
themselves and all others similarly situated,

                            Plaintiffs,

vs.

XEROX CORPORATION, PLAN
ADMINISTRATOR COMMITTEE, XEROX
MEDICAL CARE PLAN FOR RETIRED
EMPLOYEES, XEROX DENTAL CARE
PLAN, and XEROX CORPORATION 1986
ENHANCED EARLY RETIREMENT
PROGRAM,

                            Defendants.

_____

DECISION AND ORDER

20-CV-6979 (CJS)

Plaintiffs Paul and Marilyn Vollmer filed this putative class action against Defendants Xerox Corporation, Plan Administrator Committee, Xerox Medical Care Plan for Retired Employees, Xerox Dental Care Plan, and Xerox Corporation 1986 Enhanced Early Retirement Program (collectively, "Xerox"). Plaintiffs allege that Xerox violated the terms of its employee benefit plan and breached fiduciary and statutory duties when, in January of 2019, it required all participants in the company's 1986 Enhanced Early Retirement Program to begin paying 50% of the premiums for their medical and dental insurance. Compl., Nov. 16, 2020, ECF No. 1. The matter is presently before the Court on Plaintiffs' motion for a preliminary injunction. Mot. for Prelim. Inj., Nov. 24, 2020, ECF No. 5.

For the reasons stated below, Plaintiffs' motion for a preliminary injunction [ECF No. 5] is denied. Defendants are directed to respond to Plaintiffs' complaint as agreed in

the waiver of service filed on December 17, 2020.[1] Waiver, Dec. 17, 2020, ECF No. 12.

## BACKGROUND

Plaintiff Paul Vollmer was employed by Xerox from 1964 until January 1987. Mot. for Prelim. Inj. (Ex. A), ¶ 3, Nov. 24, 2020, ECF No. 5-3 ("Mr. Vollmer's Decl."). During that period, both Mr. and Mrs. Vollmer, were enrolled in the medical and dental insurance plans provided by Xerox. Mr. Vollmer's Decl. at ¶ 3, 4. For much of that time, Xerox paid the full cost of the plans. *Id.* However, in 1983 Xerox notified employees it would begin requiring some level of employee contribution. Mr. Vollmer's Decl. at ¶ 8.

In a letter dated October 17, 1986, Xerox informed Mr. Vollmer that he met the eligibility requirements for the Enhanced Early Retirement Program ("ERP"). Mr. Vollmer's Decl. at ¶ 14. The letter stated that eligible employees who elected to retire by January 31, 1987 would be able to obtain medical and dental insurance for themselves and their respective spouses for the rest of their lives through the original retiree plans (the "Old Plan"), which did not require a contribution from plan participants toward the annual premiums. Mr. Vollmer's Decl. at ¶ 16. After receiving the eligibility letter, Mr. and Mrs. Vollmer attended two workshops together on the ERP. Mr. Vollmer's Decl. at ¶ 21. According to Mr. Vollmer, "[t]he most asked question at these workshops was whether the Medical/Dental Benefits would be changed in any way in the future. The answer was firmly 'No.'" Mr. Vollmer's Decl. at ¶ 21.

---

[1] In their "Waiver of the Service of Summons," counsel for Defendants stated, in pertinent part, "[t]he entities I represent also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from November 23, 2020, the date when this request was sent." Waiver, ECF No. 12 at 2. Additionally, during oral argument on December 23, 2020, the Court indicated that it would be willing to keep this case on a "fast track" to resolution if the parties were to agree to a schedule for expedited discovery and briefing.

Thereafter, Mr. Vollmer elected to take early retirement through the program. As he describes it:

> The guaranteed offer of non-contributory lifetime medical and dental benefits under the Old Plan was critical in my decision to take the 1986 offer and elect to participate in the ERP. The offer encouraged us to take the enhanced retirement by January 31, 1987, which could effectively double our Xerox retirement benefits.

Mr. Vollmer's Decl. at ¶ 23. For almost 32 years, the Vollmers received medical and dental insurance through the Old Plan, and were not required to make any contributions to the premium payments. Mr. Vollmer's Decl. at ¶ 25. They did not budget or save for medical expenses other than deductibles and copays because they believed they had been promised lifetime, noncontributory benefits. *Id.*

Then, in October 2018, Xerox notified the Vollmers that, effective January 1, 2019, they would be required to share 50% of the premium cost of coverage under the Old Plan, that Xerox would not contribute toward the cost of alternate coverage, and that plan participants would not be permitted to re-enroll in the Old Plan at a later date if at any time they discontinued participation. Mr. Vollmer's Decl. at ¶ 27. The Vollmers were advised that the monthly cost of their medical and dental coverage would be $260.47 each, for a total of $520.94 per month.[2] Mr. Vollmer's Decl. at ¶ 28. The Vollmers researched other plans, but the alternate plans did not provide the same benefits as the Old Plan, and it would be cost prohibitive to duplicate the benefits of the Old Plan in an

---

[2] The Vollmers also received notice, in October 2020, that their share of the premiums would increase to 60% in 2021, which would amount to $341.02 per person, for a total of $682.04 per month. Marilyn's 1st Decl. at ¶ 14. However, in light of this lawsuit and the motion for preliminary injunctive relief, Xerox has decided to suspend the implementation of this increase for the time being. Decl. of Suzan Morno-Wade, ¶ 6, Dec. 14, 2020, ECF No. 11-1.

alternate plan. Mr. Vollmer's Decl. at ¶ 30.

Consequently, the Vollmers continued to participate in the Old Plan and began paying monthly premiums. Mr. Vollmer describes the harm that such payments have caused his wife and him:

> We have had difficulty paying the premiums, which consist of approximately 20% of our income. We live on a fixed income, consisting of our Social Security retirement benefits, a monthly annuity that we purchased from the lump sum retirement benefit I received from Xerox and a small amount of other savings. When our air conditioning system failed last summer, we had to refinance our mortgage to pay to replace it and install insulation, because we had no saving to cover the cost. We were forced to reduce our spending, eliminating memberships and subscriptions, downgrading our TV programming, and eliminating ownership of one of our vehicles. Even before the pandemic, we had to stop going to movies and dining out; we also limited our travel. We can no longer afford to get haircuts and we cut our own hair.

Mr. Vollmer's Decl. at ¶ 31.[3]

In a letter dated November 9, 2018, the Vollmers initiated a claim with the Plan Administrator Committee to enforce their rights to non-contributory coverage under the Old Plan. Resp. (Ex. 1), Dec. 14, 2020, ECF No. 11-2. That claim was denied in April 2019, and the denial stated, in part, that "Section 7.1 of Old Plan states that Xerox reserves the right to amend, suspend or terminate the Plan at any time and for any reason." Mr. Vollmer's Decl. (Ex. J), ECF No. 5-3 at 139. The Vollmers appealed, and the Plan Administrator Committee denied the appeal, stating again that "Section 7.1 of Old

---

[3] Plaintiff Marilyn Vollmer has also submitted a declaration detailing the harm caused her and her husband by Xerox's requirement of a premium contribution. Mot. for Prelim. Inj. (Ex. B), 2–9, Nov. 24, 2020, ECF No. 5-4 ("Mrs. Vollmer's 1st Decl."). Her description of the harm they have already suffered does not differ significantly from Mr. Vollmer's. Mrs. Vollmer's 1st Decl. at ¶ 11. However, Mrs. Vollmer's declaration does contain significantly more detail about the cost differentials between the Old Plan and various other plans available to the Vollmers. Mrs. Vollmer's 1st Decl. at ¶ 17–30.

Plan states that Xerox reserves the right to amend, suspend or terminate the plan at any time and for any reason." Mr. Vollmer's Decl. (Ex. L), ECF No. 5-3 at 184. The denial letter also informed the Vollmers of their right to file suit against Xerox under ERISA, noting that "[i]f you disagree with the Committee's decision on appeal, you have the right to bring a civil action under Section 502(a) of ERISA. Such an action may only be brought in Federal District Court in Monroe County, New York and must be commenced within the later of 180 days after the date of the Committee's determination of the appeal." Mr. Vollmer's Decl. (Ex. L), ECF No. 5-3 at 186.

While the Vollmers' appeal was being considered by the Plan Administrator Committee, Mrs. Vollmer had contacted attorneys and the Department of Labor to help stave off the contribution requirements. Reply (Ex. 1), ¶ 9, Dec. 21, 2020, ECF No. 13-1 ("Mrs. Vollmer's 2d Decl."). She was unsuccessful in finding representation, and continued to search for counsel after receiving the Plan Administrator Committee's denial of their appeal. Mrs. Vollmer's 2d Decl. at ¶ 10. In late May 2020, the Vollmers secured counsel, and counsel entered into an agreement with Xerox to toll the 180-day limitations period until November 16, 2020. Mrs. Vollmer's 2d Decl. at ¶ 11–12.

When the tolling agreement expired, the Vollmers filed the present case on behalf of themselves and others similarly situated. As indicated above, the Vollmers' complaint includes two causes of action. Count 1 alleges Xerox's violation of the terms of the Old Plan, actionable under ERISA § 502(a)(1)(B). Compl. at ¶ 90–93. Count 2 alleges Xerox's violation of fiduciary and statutory duties, actionable under ERISA § 502(a)(3). The Vollmers subsequently filed the application for a preliminary injunction which is now

before the Court, asking that pursuant to Fed. R. Civ. P. 65, Xerox be enjoined from requiring participants in the Old Plan and their spouses to contribute to the cost of the plan's premiums, and ordered to allow former plan participants to re-enroll in the Old Plan. Mot for Prelim. Inj., Nov. 24, 2020, ECF No. 5. The Court heard oral argument via video-conference on December 23, 2020. Min. Entry, Dec. 23, 2020, ECF No. 14.

DISCUSSION

<u>Do Plaintiffs seek a prohibitory or mandatory preliminary injunction?</u>

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007). As a threshold issue, in order to discern the Vollmers' burden of persuasion, the Court must first determine whether they are seeking a "prohibitory" or a "mandatory" preliminary injunction.

"Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). "The '[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir.1994)). "To preserve the status quo a court may require the parties to act or to refrain from acting." *LaRouche*, 20 F.3d at 74 (2d Cir. 1994)

6

In the motion now before the Court, the Vollmers ask that Xerox be enjoined from seeking contributions toward the premium for their medical and dental coverages. They also ask that Xerox be ordered to permit participants who left the Old Plan rather than make the premium contributions to re-enroll in the Old Plan. In short, Plaintiffs ask that the Court put the parties back in the positions they occupied before January 1, 2019, when Xerox implemented the requirement that participants in the Old Plan contribute 50% of their premium payments.

The Court finds that the positions the parties occupied prior to implementation of the premium payment requirement in January 2019 is the "last actual, peaceable uncontested status" preceding the present controversy. For approximately thirty-two years, until January of 2019, the Vollmers were provided with medical and dental insurance under the Old Plan without contributing to the premium payments. *See* Mr. Vollmer's Decl. at ¶ 27. Immediately upon notification of the requirement that they contribute toward premium payments beginning in January 2019, the Vollmers contested the payments: first using the claims and appeals process through the plan administrators, and then by initiating the present litigation. *See* Mrs. Vollmer's 1st Decl. at ¶ 6–12 (describing the Vollmers' challenge to the premium payments beginning with their first letter to Xerox on November 9, 2018 through the filing of their complaint on November 16, 2020). Therefore, the Court determines that the Vollmers are seeking a prohibitory preliminary injunction.

<u>Do Plaintiffs satisfy the burden of persuasion for a prohibitory preliminary injunction?</u>

Having determined that the Vollmers seek a prohibitory preliminary injunction, the Court must now evaluate whether they have satisfied their burden of persuasion. To obtain a "prohibitory" preliminary injunction to preserve the status quo, the movant must show (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, (3) public interest weighing in favor of granting the injunction, and (4) that the balance of equities tips in its favor. *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

With respect to the foregoing standard, the Second Circuit has made clear that,

A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . . [t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal citations and quotation marks omitted) (alterations in original). In other words, the movant must establish that it *is likely* to suffer irreparable harm if relief is denied, not simply *the mere possibility* of irreparable harm. *See Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp.2d 525, 531 (S.D.N.Y. 2004) (*quoting JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990)). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley Transp. Malmo AB*, 559 F.3d at 118.

Plaintiffs point out that another court in this district, the Northern District of New York, and the Second Circuit, have all found that "the mere threat of termination of

medical benefits" constitutes irreparable harm. *See Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019); *Commc'ns Workers of America, District One v. Nynex Corp.*, 898 F.2d 887 (2d Cir.1990); *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir.1979); *Ambrose v. Int'l Bhd. of Elec. Workers Local No. 43 & Elec. Contractors' Welfare Fund*, No. 5:13-CV-93, 2013 WL 587497, *2 (N.D.N.Y. Feb. 13, 2013); *Laforest v. Honeywell Int'l, Inc.*, No. 03-CV-6248T, 2003 WL 23180220, at *1 (W.D.N.Y. Sept. 19, 2003), *aff'd and remanded sub nom. LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004). However, the Court finds the cases cited by Plaintiffs to be distinguishable from the facts of the present case.

In all of the cases cited by Plaintiffs, the respective courts found a showing of irreparable harm where the movants faced an involuntary, unilateral termination of coverage for non-financial reasons. For instance, in the seminal case of *Whelan v. Colgan*, the Second Circuit found a showing of irreparable harm and granted a preliminary injunction against the trustees of a benefits plan where the trustees were blocking payments of various medical and welfare benefits to union employees who went on strike. *Whelan*, 602 F.2d at 1061. *See also Commc'ns Workers of America*, 898 F.2d at 888 (involving a company's notice to striking workers that their medical coverage would terminate with no option for continuation of coverage [COBRA] because the labor agreement between the parties providing for the medical plan had expired, and negotiations on a new agreement had failed). In *Kelly v. Honeywell, Int'l, Inc.*, the Second Circuit agreed with the parties that plaintiffs had made a sufficient showing of irreparable harm where the company had completely terminated the medical coverage

for a group of retirees, and disputed their entitlement to any benefits. *Kelly*, 933 F.3d at 184. Finally, in *Laforest v. Honeywell Int'l, Inc.,* the court found a showing of irreparable harm and granted a preliminary injunction where a successor-in-interest to a guaranty agreement had refused to make payments under the agreement to restore retiree health benefits where the company originally providing the benefits unilaterally terminated the plan. *Laforest,* 2003 WL 23180220 at *2. *See also Ambrose*, 2013 WL 587497 at *2 (finding a showing of irreparable harm where the plan threatened to offset payments on future medical expenses by the value of an alleged lien).

   In the present case, however, the Vollmers do not submit any evidence that would suggest they faced an involuntary termination of coverage, or that the harm they potentially faced could not be remedied by an award of monetary damages. On the contrary, Xerox has expressed its intent to continue the plan, and to continue to permit the Vollmers to participate in the plan provided they contribute 50% of the plan's annual premiums. While such a shift from a non-contributory position no doubt imposes a financial burden on the Vollmers, nothing in their submissions suggests that they face an imminent termination of coverage. Instead, the Vollmers indicate that the premium payments consume 20% of their income, and simply detail some of the financial sacrifices they have had to make to continue to maintain coverage under the plan, including: refinancing their home, selling one of their vehicles, downgrading TV subscriptions, foregoing outings to dinner and a movie, limiting travel, and cutting their own hair. Consequently, the Court finds that the Vollmers have failed to demonstrate irreparable harm. Their motion for a preliminary injunction is, therefore, denied.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiffs' motion for a preliminary injunction [ECF No. 5] is denied. Defendants are directed to respond to Plaintiffs' complaint as agreed in the waiver of service.

SO ORDERED.

Dated:      January 6, 2021
            Rochester, New York

                                          ENTER:

                                          CHARLES J. SIRAGUSA
                                          United States District Judge