UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL VOLLMER and MARILYN VOLLMER,
on behalf of themselves and all other similarly situated,

                Plaintiffs,

v.

XEROX CORPORATION; PLAN ADMINISTRATOR COMMITTEE; XEROX MEDICAL CARE PLAN FOR RETIRED EMPLOYEES; XEROX DENTAL CARE PLAN; and XEROX CORPORATION 1986 ENHANCED EARLY RETIREMENT PROGRAM,

                Defendants.

Case No. 6:20-cv-6979-CJS-MWP

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE VOLLMERS' CLAIMS ARE TIME BARRED. ............................................2

        A.    The Vollmers' Benefit Claim Was Repudiated By 2010 At The Latest. ..........................................................................................................2

            1.    The 2010 Enrollment Guide ............................................................3

            2.    Changes To Old Plan Coverage Following Mr. Vollmer's Retirement. .......................................................................................4

            3.    Rescission Of Changes And Individualized Communications. ................................................................................5

        B.    The Vollmers' Fiduciary Breach Claim Is Time-Barred. ............................5

        C.    The SPD Claim Is Untimely. .......................................................................6

    II.    THE VOLLMERS' CONTRACTUAL VESTING CLAIM LACKS MERIT. ................................................................................................................7

    III.    THE FIDUCIARY BREACH AND SPD CLAIMS LACK MERIT AND PROVIDE NO BASIS FOR RECOVERING EQUITABLE RELIEF. ..................9

    IV.    THE VOLLMERS' SPD CLAIM ALSO FAILS ON THE MERITS. ...................10

CONCLUSION .............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbruscato v. Empire Blue Cross & Blue Shield*,
    274 F.3d 90 (2d Cir. 2001) ................................................................................................. 7

*Amara v. CIGNA Corp.*,
    775 F.3d 510 (2d Cir. 2014) ............................................................................................... 9

*Bell v. Xerox Corp.*,
    52 F. Supp. 3d 498 (W.D.N.Y. 2014) ................................................................................ 3

*Bilelo v. JPMorgan Chase Ret. Plan*,
    607 F. Supp. 2d 586 (S.D.N.Y. 2009) ................................................................................ 3

*Caputo v. Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001) ............................................................................................... 6

*Coriale v. Xerox Corp.*,
    775 F. Supp. 2d 583 (W.D.N.Y. 2011) ..................................................................... 4, 8, 9

*Feifer v. Prudential Ins. Co. of Am.*,
    306 F.3d 1202 (2d Cir. 2002) ............................................................................................. 7

**STATUTES**

29 U.S.C. § 1113 ............................................................................................................................ 6

**PRELIMINARY STATEMENT**

The Vollmers' responding brief makes the same arguments for avoiding dismissal on statute of limitations grounds that already were shown to be inadequate. Try as they may, the Vollmers cannot avoid the fact that, by 2010, they were aware that the Old Plan[1] contained a reservation of rights clause, and that the plan's terms had been changed on previous occasions. This should have disabused the Vollmers of any mistaken belief that the Old Plan could not be changed. It thus commenced the limitations periods for the Vollmers' contractual vesting and SPD claims. It likewise commenced the limitations period for the Vollmers' fiduciary breach claim, even if, as the Vollmers mistakenly contend, that period had not already commenced in 2003, when Xerox executed a plan document containing a reservation of rights clause.

The Vollmers' responding brief fares no better with respect to the merits of their claims. The Vollmers offer no basis to dispute that the 1980 SPD—with its reservation of rights language—met the legal criteria of a summary plan description; and that the 1984 Guidebook did not. Xerox's unawareness of the 1980 SPD when it initially denied the Vollmers' claim, and its mistaken reference to the guidebook as an SPD, does not entitle the Vollmers to change this fact into fiction. Nor can they change fact into fiction by trying to construe the reservation of rights language in the 1980 SPD as inapplicable to their claim, or by characterizing the guidebook as containing a promise of lifetime, non-contributory benefits when no such promise was made.

The Vollmers also cannot manufacture an SPD or fiduciary breach claim based on allegations of misrepresentations about the ERP that simply were not made. The documents concerning the ERP merely stated that, by retiring within the ERP Window, the Vollmers would

---

[1] Unless otherwise stated, capitalized terms shall have the same definitions as set forth in Defendants' moving brief (Dkt. 44-1).

be entitled to whatever benefits were provided by the Old Plan – nothing more.  The other communications on which the Vollmers rely cannot sustain their claim because the Vollmers did not receive them.  In any event, the Vollmers cannot prevail on their fiduciary breach and SPD claims because they have not satisfied the criteria for equitable relief.  Rather than dispute that they came out ahead financially by Mr. Vollmer's decision to retire early, the Vollmers try to shift the focus to Xerox's alleged savings.  But doing so does not change the fact that the Vollmers were not harmed as a result of Mr. Vollmer's early retirement, or that they were not inequitably treated.

Accordingly, the Court should grant Defendants' Motion for Summary Judgment.

## ARGUMENT

**I.      THE VOLLMERS' CLAIMS ARE TIME BARRED.**

The authorities cited in the Vollmers' responding brief do not alter the fundamental reasons for finding that their claims are time-barred, including: (i) notice to the Vollmers by June 2010 that the Old Plan contained a reservation of rights clause; and (ii) earlier notice to the Vollmers of material changes made to the Old Plan since Mr. Vollmer's retirement.[2]  These notices dispelled any belief—whether expressed in support of a Section 502(a)(1)(B) claim, fiduciary breach claim, or SPD claim—that the Vollmers had a "right to unchanging medical and dental benefits." Dkt. 49 at 11.  Accordingly, their effort to challenge the most recent change—this time in the form of a contribution requirement—is time-barred.

**A.      The Vollmers' Benefit Claim Was Repudiated By 2010 At The Latest.**

Defendants already explained why the Vollmers cannot dodge the statute of limitations

---

[2] As discussed below, for the fiduciary breach claim the statute of repose should have begun to run in 2003, when Xerox executed a plan document containing a reservation of rights clause.

2

defense to their benefit claim based on either the Old Plan's claims procedures or a judicial estoppel argument. Dkt. 48 at 9–12. The alternative grounds asserted are equally unavailing.

        1.      <u>The 2010 Enrollment Guide</u>. The Vollmers contend that the 2010 enrollment guide did not trigger the limitations period because it did not repudiate their "right to unchanging medical and dental benefits." But the first page of the guide expressly reserved Xerox's right to make changes. Dkt. 44-2 ¶¶ 24–25; *see Bell v. Xerox Corp.*, 52 F. Supp. 3d 498, 502, 510–11 (W.D.N.Y. 2014) ("find[ing]" that Section 502(a)(1)(B) claims, based on alleged entitlement to "unchanging, unalterable, lifetime benefits" under the Old Plan, accrued upon receipt of notice of reservation of rights clause)[3]; *Bilelo v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 593 (S.D.N.Y. 2009) (holding that when "plan participants are given notice of an amendment that contains a clear repudiation of the benefit terms to which [plaintiff] claims that he is entitled . . . [the] ERISA claims addressed to the amendment's repudiation of those claims accrue"). The Vollmers argue that this page should be ignored because the guide states elsewhere that the Old Plan was not presently undergoing changes, and separately advised that participants who were not making changes to their *own* coverage, *e.g.*, covered family members, "don't need to do anything." Dkt. 49 at 11; *see also* Dkt. 44-19 at VOLLMER_0001709. But neither statement undermines the force or implications of the reservation of rights clause on Page 1. Moreover, the Vollmers' contention that they were independently told to "disregard" the 2010 enrollment guide (as opposed to the "two-pager" or "FYI" materials from years earlier, referred to in their

---

[3] Contrary to the Vollmers contentions, even though Judge Larimer ultimately found the *Bell* Plaintiffs' Section 502(a)(1)(B) claims to be timely, he did specifically "find" that the claims accrued when plaintiffs received an enrollment guide that referenced the Old Plan's reservation of rights clause. His statement that the claim accrued "at the earliest" in 2008 was made in response to defendants' contention that the claims were time-barred because the plaintiffs were aware of the reservation of rights clause even earlier. *See* Ex. 46 at 16.

deposition testimony, (Ex. 44 at 100:9–101:5; Ex. 45 at 18:20–24:6, 72:19–73:17))[4] cannot be squared with their admission that they were provided with the 2010 enrollment guide in response to their request for a summary of the Old Plan's terms. Dkt. 44-2 ¶ 26.

2. <u>Changes To Old Plan Coverage Following Mr. Vollmer's Retirement</u>. The Vollmers do not dispute that material changes to the Old Plan would have repudiated their claim for unalterable benefits. Instead, they argue that one of the changes identified by Defendants—to physical therapy coverage—did not occur; and the other—to the prescription drug program—was immaterial.[5] The first argument is refuted by comparing a 2003 Old Plan benefits booklet, which states that the plan covered 100% of "facility billed" physical therapy expenses, to the 2009 enrollment guide, which states that coverage was for only 80% of the same expenses. *See* Dkt. 44-1 at 7; Dkt. 44-2 ¶ 61; *see also* Ex. 45 at 96:21–97:17 (Mrs. Vollmer agreeing that plan records reflect changes in physical therapy coverage). The second argument is refuted by Mr. Vollmer's admission that after the Old Plan adopted the "Maximum Allowable Cost" program he changed from a brand name blood pressure drug to a generic one. *See* Ex. 44 at 105:18–108:5. But even if the Vollmers were not impacted by the changes in coverage, this would not alter the conclusion that the changes were material enough to trigger the accrual of their claim. *See Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583, 591 (W.D.N.Y. 2011) (rejecting argument that changes to Flex Plan were too "inconsequential" to trigger statute of limitations, because "some participants' benefits were *reduced* . . . clearly put[ting] the lie to any claim that plaintiff['s] benefits were to remain fixed for all time"), *aff'd*, 490 F. App'x 387 (2d Cir. 2012).

---

[4] "Ex." citations refer to exhibits filed with the Declaration of Joseph E. Clark, filed contemporaneously with this brief.

[5] Contrary to the Vollmers' contentions (Dkt. 49 at 12 n.3), Defendants' argument on this issue is fully supported with record citations. *See* Dkt. 44-1 at 7–8; Dkt. 44-2 ¶¶ 54–61.

4

3.      Rescission Of Changes And Individualized Communications.  Finally, the Vollmers contend that notices of rescissions of certain changes to the Old Plan, and other communications that allegedly conceded that Xerox did not reserve the right to change the plan, prevented the statute of limitations from running.  Dkt. 49 at 11-12.  Most of these communications are irrelevant to the question of whether the Vollmers' beliefs were repudiated by the 2010 enrollment guide because the Vollmers did not receive them.  *See, e.g.*, Dkt. 48 at 6; 8–9; Dkt. 48-1 ¶¶ 163-68.  Although the Vollmers did receive notice that a cap on dental expense reimbursements was rescinded, they could not reasonably have construed this to signal doubts about Xerox's ability to change the Old Plan because Xerox already had changed the prescription drug coverage by then.  Furthermore, the rescission could not be attributable to any special vested status enjoyed by "ERP retirees," as the Vollmers contend, because it applied to all Old Plan participants.  *See* Dkt. 48-1 ¶¶ 137-38, 149-50.  Finally, even if the rescission somehow led the Vollmers to believe that Xerox could not change the Old Plan, this belief would have been dispelled when the Vollmers received the enrollment guide with an express reservation of rights.

**B.      The Vollmers' Fiduciary Breach Claim Is Time-Barred.**

The Vollmers maintain that the 2003 Plan Document containing an express reservation of rights clause did not apply to them, and thus did not trigger the six-year statute of repose for their fiduciary breach claim, because Mr. Vollmer did not meet the age and service requirements set forth in that document.  Dkt. 49 at 5, 14.  This argument is unavailing because, as previously stated and not refuted: the documents explaining the ERP clearly advised that those who retired within the ERP Window would be covered by the Old Plan (Dkt. 49-1 ¶ 37); and the Vollmers' records confirm that they considered themselves Old Plan participants.  *See* Dkt. 48 at 8, 13.[6]

---

[6] The Vollmers claim that the 2003 Plan Document did not authorize the contribution requirement because a December 2018 amendment to the Old Plan separately authorized that

5

The Vollmers also contend that ERISA's "fraud or concealment" rule should apply in lieu of the statute of repose, because of alleged subsequent "representations to ERP retirees that the Old Plan's benefits could not change." Dkt. 49 at 14. But these communications cannot justify application of the fraud or concealment rule here because the Vollmers do not claim to have received them. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) (holding that for fraud or concealment rule to apply, plaintiff must "allege that the defendant committed either: (1) a 'self-concealing act' – an act committed during the course of the breach that has the effect of concealing the breach *from the plaintiff*; or (2) 'active concealment' – an act distinct from and subsequent to the breach intended to conceal it") (emphasis added).

Even if the fraud or concealment rule applied, moreover, the six-year period still would have commenced by 2010, since the enrollment guide provided to the Vollmers then directly contradicted any belief that Xerox did not retain the right to make changes to the Old Plan. *See* 29 U.S.C. § 1113 (providing that in cases of fraud or concealment, fiduciary breach claim "may be commenced not later than six years after the date of discovery of such breach or violation"). The Vollmers claim that the guide did not "advise[] ERP retirees that Xerox reserved the right to require contributions or change Old Plan benefits" (Dkt. 49 at 13), but as previously explained (Dkt. 44-1 at 4), by reserving Xerox's right to make *any* changes to the Old Plan, the guide necessarily placed the Vollmers on notice that Xerox could insert a contribution requirement.

## C. The SPD Claim Is Untimely.

The Vollmers' one response to the argument that their nondisclosure claim is time-barred is the same as one offered in connection with their fiduciary breach claim – that the 2010

---

change. Dkt. 49 at 14. Xerox's Rule 30(b)(6) designee clearly testified, however, that the 2018 amendment was not needed to authorize the contribution requirement. Ex. 49 at 104:20-107:24.

6

enrollment guide did not specifically refer to Xerox's reserved right to impose contribution requirements. Dkt. 49 at 15. For the reasons stated above, distinguishing between plan changes generally and a change that imposes a contribution requirement is a distinction without a difference, particularly since the Vollmers believed the Old Plan could not be changed at all.

**II.     THE VOLLMERS' CONTRACTUAL VESTING CLAIM LACKS MERIT.**

The Vollmers do not dispute that a reservation of rights clause would trump an alleged promise of lifetime benefits. *See* Dkt. 44-1 at 15. Nevertheless, they proffer two reasons why the clause appearing in the 1980 SPD is ineffective. Neither reason is persuasive.

First, the Vollmers point out that the reservation of rights clause appears in a section of the 1980 SPD entitled "About your Job," rather than the section describing benefits. Dkt. 49 at 2-3. But the clause specifically contemplates changes to the "plans." *See* Dkt. 44-2 ¶¶ 19-20. Moreover, for purposes of defeating a contractual vesting claim, it is sufficient that reservation of rights language appears in the same document that allegedly promised non-contributory, unalterable benefits for life. Its particular location within the document is immaterial. *See* Dkt. 44-1 at 15; *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 98–99 (2d Cir. 2001) (holding that reservation of rights language allegedly promising lifetime life insurance coverage—"albeit in a different section of the SPD"—applied to entire SPD).

Second, the Vollmers seize on the fact that Defendants did not consistently identify the 1980 SPD as the Old Plan document, and instead at times referred to the 1984 Guidebook as such. Dkt. 49 at 3, 16. There is no evidence that the Plan Administrator Committee (the "PAC") was aware of the 1980 SPD when these statements were made, more than 30 years after the 1980 SPD was issued. Consistent with applicable law, the PAC concluded that, in the absence of a document meeting the criteria of a plan document, it should treat the 1984 Guidebook as if it were a plan document. *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1208-09 (2d Cir.

7

2002) (concluding that a "Program Summary" was the governing plan document when it was the only existing document describing employee benefits, despite its disclaimers that "it was 'not intended to cover all details of the Plan' and the 'actual provisions of the Plan will govern'").

Once alerted to the 1977 and 1978 Family Security Plan booklets and 1980 SPD, however, the PAC reversed course. Plan counsel opined that these documents were summary plan descriptions and that the 1984 Guidebook "is not and does not purport to be an SPD. It fails to include a Statement of ERISA Rights or any other ERISA-required SPD provisions." See Ex. 47 at XER-00013379-81. This advice was reflected in the PAC's subsequent denial of the Vollmers' administrative appeal. The denial letter specifically referenced the 1977 and 1978 Family Security Plan booklets and 1980 SPD, which the Vollmers submitted in support of their appeal, and concluded that "[t]he governing plan documents have provided, since at least 1977, that Xerox may change the terms of its plans providing both active and retiree medical benefits." Dkt. 44-33. In short, the conclusion that the 1984 Guidebook was the Old Plan SPD was mistaken, and was corrected once the PAC was aware of the 1980 SPD and earlier documents. It does not justify a ruling on the Vollmers' contractual vesting claim that is contrary to law.

Finally, even if the Court concludes that the 1984 Guidebook was the governing plan document at the time of the ERP, as previously explained, it did not promise lifetime, non-contributory coverage under the Old Plan. See Dkt. 48 at 16-17. As Judge Larimer concluded in *Coriale*, the guidebook's language "could not reasonably have been interpreted as containing any promises" of unalterable or unreducible coverage, because it did not "promise[] any particular level of coverage, nor [] promise never to reduce benefits." *Coriale*, 775 F. Supp. 2d at 594-95.[7]

---

[7] Although *Coriale* primarily concerned the Flex Plan, Judge Larimer's analysis applies with equal force to the Old Plan. After concluding that the 1984 Guidebook "cannot be considered [a]

8

Accordingly, the Vollmers' contractual vesting claim should be dismissed on the merits.

### III. THE FIDUCIARY BREACH AND SPD CLAIMS LACK MERIT AND PROVIDE NO BASIS FOR RECOVERING EQUITABLE RELIEF.

The Vollmers claim that, because detrimental reliance is not necessarily a condition for a fiduciary breach claim, it does not matter whether they reviewed the communications that allegedly contained misleading statements about their right to unalterable, lifetime benefits. Dkt. 49 at 20–21. But in order to have Article III standing they must show that these communications harmed them, which they cannot do if they never read them. *See* Dkt. 44-1 at 19-20; Dkt. 48 at 6, 8–9 (explaining that Vollmers never reviewed documents on which they rely).

Apparently sensing the absurdity of their position, the Vollmers ultimately argue that they were induced to retire based on the communications about the ERP that they did review. As previously explained (Dkt. 44-1 at 18-20), these communications do not support a reasonable belief that the Vollmers were entitled to unalterable lifetime benefits.[8] For that reason alone, they provide no basis for establishing either the merits of their fiduciary breach claim or an entitlement to reformation relief. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 525–26 & n.12 (2d Cir. 2014) (concluding that a plaintiff seeking reformation relief must establish by clear and convincing evidence that a defendant's fraud or inequitable conduct "reasonably caused plaintiff[] to be mistaken about the terms of" the plan, and that plaintiff's "harm (actual or otherwise) flows from [his] failure to receive [his] expected agreement").

The Vollmers likewise have failed to make a case for surcharge relief, which requires a

---

plan document[]," he independently found that, even if the guidebook were a plan document, it would not support plaintiffs' contractual vesting claims. *See* 775 F. Supp. 2d at 593-95.

[8] As previously stated (*see* Dkt. 44-1 at 20–21), a breach of fiduciary claim cannot be sustained on the basis of an alleged verbal statement that, if enforced, effectively would change the terms of an ERISA plan. The Vollmers have cited no authority holding otherwise. *See* Dkt. 49 at 19.

showing of actual harm. Dkt. 44-1 at 24. The Vollmers characterize as "immaterial" the increased benefits they received as a result of Mr. Vollmer's retiring within the ERP Window. Dkt. 49-1 ¶¶ 63–66. But this is plainly contradicted by the undisputed evidence concerning the significant increase to Mr. Vollmer's pension benefits and many years of Old Plan coverage the Vollmers received only because of Mr. Vollmers' decision to retire early.[9] Dkt. 44-1 at 23. The fact that Xerox may have avoided paying him salary for some years is beside the point, as it does not alter the fact that the Vollmers were not actually harmed. Accordingly, the Vollmers have failed to establish a viable misrepresentation claim that would entitle them to equitable relief.

### IV.   THE VOLLMERS' SPD CLAIM ALSO FAILS ON THE MERITS.

The responding papers confirm that the Vollmers' SPD claim is based on the assumption that Xerox failed to timely distribute an SPD with a reservation of rights clause. For the reasons stated (Dkt. 44-1 at 24–25) the 1980 SPD did precisely that. In any event, there is no authority cited for requiring an SPD to include a reservation of rights clause.

### CONCLUSION

For the reasons explained above, this Court should grant Defendants' Motion.

---

[9] The Court may consider the report of Jeffrey Clymer (Dkt. 44-28), the Old Plan's consultant, which details the costs expended by Xerox on the Vollmers by virtue of Mr. Vollmer's early retirement. The report was identified in Defendants' Supplemental Initial Disclosures, and since it is not offered as an expert report no additional disclosures were required. *See* Ex. 48 at 3.

Dated: November 19, 2021
       New York, NY

Respectfully submitted,

<u>*/s/ Myron D. Rumeld*</u>
Myron D. Rumeld
Joseph E. Clark
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
mrumeld@proskauer.com
jclark@proskauer.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on November 19, 2021, I caused a true and correct copy of the foregoing Defendants' Reply Brief In Support Of Defendants' Motion for Summary Judgment, and supporting Declaration and exhibits to be served on all counsel of record via the Court's electronic filing system (CM/ECF).

*/s/ Myron D. Rumeld*
Myron D. Rumeld

*Counsel for Defendants*
