UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL VOLLMER and
MARILYN VOLLMER, on behalf of
themselves and all others similarly situated,

                           Plaintiffs,                    DECISION AND ORDER

vs.                                                            20-CV-6979 (CJS)

XEROX CORPORATION, PLAN
ADMINISTRATOR COMMITTEE, XEROX
MEDICAL CARE PLAN FOR RETIRED
EMPLOYEES, XEROX DENTAL CARE
PLAN, and XEROX CORPORATION 1986
ENHANCED EARLY RETIREMENT
PROGRAM,

                           Defendants.

_____

Plaintiffs Paul and Marilyn Vollmer (collectively, "the Vollmers") filed this putative

class action against Defendants Xerox Corporation, Plan Administrator Committee, Xerox

Medical Care Plan for Retired Employees, Xerox Dental Care Plan, and Xerox

Corporation 1986 Enhanced Early Retirement Program (collectively, "Xerox"). The

Vollmers allege that Xerox violated the terms of its employee benefit plan when, in

January of 2019, it required all participants in the company's 1986 Enhanced Early

Retirement Program ("ERP") to begin paying 50% of the premiums for medical and dental

insurance that Xerox had previously promised to provide for them without requiring

copayment on the premiums. Compl., Nov. 16, 2020, ECF No. 1. In addition, the Vollmers

allege that Xerox breached fiduciary duties under ERISA. *Id.* The matter is presently

before the Court because both the Vollmers and Xerox, respectively, have filed motions

for summary judgment. Def. Mot. for Summ. J., Sept. 24, 2021, ECF No. 44; Pl. Mot. for

Summ. J., Sept. 24, 2021, ECF No. 45.

For the reasons stated below, Xerox's motion for summary judgment [ECF No. 44] is granted with respect to the Vollmers' breach of fiduciary duties claim, and denied with respect to the Vollmers' denial of benefits claim. The Vollmers' motion for summary judgment [ECF No. 45] is denied.

BACKGROUND

The following background is drawn from the undisputed facts in the parties' respective statements of material fact pursuant to Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court of the Western District of New York, as well as the documents incorporated by reference therein.

Plaintiff Paul Vollmer was employed by Xerox from 1964 to 1987. In October 1986, Xerox sent Mr. Vollmer a letter informing him that Xerox records indicated he was eligible for the Enhanced Early Retirement Program ("ERP"). The ERP encouraged early retirement by, among other things, promising qualified early retirees an increase in their Retirement Income Guarantee Plan benefit, as well as medical and dental insurance coverage through the Xerox Medical Care Plan for Retired Employees (the "Old Plan"), which provided more generous benefits than the plans the company would offer in the future. ERP Offer (Pl. Ex. 34), 2, Sept. 24, 2021, ECF No. 46-34. To better understand the retirement benefits for which he would be eligible, the letter encouraged Mr. Vollmer to consult three sources: "*You and Xerox*, pages 41–56, *You and Xerox Supplement '85*, and *The Xerox Medical and Dental Plans for Retired Employees*." (Emphasis in the original.). After exploring his options and attending ERP question-and-answer sessions

2

run by APEX, a third-party benefits consulting company hired by Xerox, Mr. Vollmer opted to take early retirement in 1987 and accept the ERP benefits. As a result, he and his wife, Marilyn, became participants in the Old Plan.

Between Mr. Vollmer's retirement from Xerox in 1987 and December 2018, Xerox paid the full premiums for the Vollmers' medical and dental insurance coverage through the Old Plan. In October 2018, however, the Vollmers received notice from Xerox that, effective January 1, 2019, they would be required to pay 50% of their monthly medical and dental insurance premiums if they wanted to continue coverage through the Old Plan. In November 2018, the Vollmers filed a claim with the Plan Administrator Committee ("PAC") of the Old Plan contesting the change and demanding coverage with no premium sharing. Nevertheless, the Vollmers wanted to continue to receive coverage through the Old Plan, so they began to pay their share of the monthly premiums while their claim was under review.

In April 2019, the PAC denied the Vollmers' claim. In its decision, the PAC found that the Vollmers' claim was untimely, because "since at least the 2003 Restatement of the [Old] Plan . . . [the plan documents stated that] the Plan Administrator may require a premium payment of any amount as the condition for continued participation in the [Old] Plan." PAC Denial (Def. Ex. 28), 4, Sept. 24, 2021, ECF No. 44-31. Additionally, the PAC decision stated that the PAC had "reviewed the 1984 Summary Plan Description (SPD) which at that time served as the [Old] Plan's only plan document, . . . . [and] it nowhere promises that coverage will always be made available free of any required participant premium." PAC Denial (Def. Ex. 28) at 4.

3

The Vollmers appealed the PAC's denial, and submitted additional documentation that they believed to support their claim. The PAC denied the Vollmers' appeal. PAC Appeal (Def. Ex. 30), 3, Sept. 24, 2021, ECF No. 44-33. The PAC reiterated that the Vollmers' claim was untimely, stating that "[t]he governing plan documents have provided, since at least 1977, that Xerox may change the terms of its plans providing both active and retiree medical benefits," and stated expressly "since at least 2003, that the Plan Administrator may require a premium payment as the condition for continued participation in the [Old] Plan." PAC Appeal (Def. Ex. 30) at 3. Additionally, the PAC stated that even if the claim were timely, it would be denied on the merits because the documents the Vollmers submitted in support of their claim were not "plan documents," they "do not promise that the [Old] Plan's then noncontributory coverage . . . would continue unchanged for life," and they did not create a "contract or separate plan" from the Old Plan. PAC Appeal (Def. Ex. 30) at 3–4.

In November 2020, the Vollmers filed the present action on behalf of themselves and other Xerox retirees similarly situated. This putative class does not include all participants and beneficiaries of the Old Plan, but only those "former Xerox employees who elected to retire pursuant to the ERP . . . and their spouses, who were receiving or eligible to receive retiree health benefits from Xerox as of December 31, 2018." Compl. at 80. The Vollmers' complaint includes two causes of action. Count 1 alleges Xerox's violation of the terms of the Old Plan, actionable under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Compl., ¶ 90–93, Nov. 16, 2020, ECF No. 1. Count 2 alleges Xerox's violation of fiduciary and statutory duties, actionable under ERISA § 502(a)(3), 29 U.S.C.

§ 1132(a)(3). Compl. at ¶ 94–106. Soon after filing the complaint, the Vollmers filed an application for a preliminary injunction which the Court subsequently denied. Dec. and Order, Jan. 6, 2021, ECF No. 15. The matter is now before the Court on the parties' respective motions for summary judgment. Def. Mot. for Summ. J., ECF No. 44; Pl. Mot. for Summ. J., ECF No. 45.

ERISA

There are two types of employee benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"): pension plans and welfare plans. A "welfare plan" includes, among other things, any plan, fund, or program established or maintained by an employer "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). A "pension plan," on the other hand, includes any plan, fund, or program established or maintained by an employer that either "(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ." 29 U.S.C. § 1002(2)(A).

"Unlike pension plan benefits, the benefits provided by a welfare plan generally are not vested and an employer can amend or terminate a welfare plan at any time." *American Fed'n of Grain Millers, AFL–CIO v. Int'l Multifoods Corp*., 116 F.3d 976, 979 (2d Cir. 1997). *See also* 29 U.S.C. § 1051(1) (specifically exempting employee welfare plans from the automatic vesting requirements). In *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488,

5

491 (2d Cir. 1988), the Second Circuit discussed the reasons for treating welfare plans differently from pension plans in this regard:

> [w]ith regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables. Actuarial decisions concerning fixed annuities are based on fairly stable data, and vesting is appropriate. In contrast, medical insurance must take account of inflation, changes in medical practice and technology, and increases in the costs of treatment independent of inflation. These unstable variables prevent accurate predictions of future needs and costs.

*Messmer v. Xerox Corp*., 139 F. Supp.2d 398, 403 (W.D.N.Y. 2001) (quoting *Moore*, 856 F.2d at 492).

Although benefits do not automatically vest under an employee welfare plan, "if any employer promises vested benefits, that promise will be enforced." *Int'l Multifoods Corp*., 116 F.3d at 980. Thus, the Second Circuit has observed that "an employee [welfare] benefit plan is effectively a unilateral contract, [and a welfare plan] becomes 'vested' if the employer has promised not to amend or terminate it . . . ." *Feifer v. Prudential Ins. Co. of America*, 306 F.3d 1202, 1211 (2d Cir. 2002). For this reason, it is well-settled that ERISA plan documents "must be interpreted according to ordinary principles of [federal] contract law." *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co*., 935 F.3d 93, 99–100 (2d Cir. 2019) (quoting *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018)). "In this endeavor, as with any other contract, the parties' intentions control." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (internal quotation marks and citation omitted). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id*.

With respect to the substance of the agreement, summary plan descriptions[1] ("SPD") are expected to "be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2nd Cir. 1990). *See also Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 61 (2d Cir. 2006) (stating that courts should generally "look to the SPD and any alleged amendments to the SPD . . . as the relevant Plan documents."). Nevertheless, while formal plan documents and an SPD are certainly the statutory standards for putting forth the terms of a welfare plan, the Second Circuit has held that courts can find an agreement to vest welfare benefits in other writings distributed to plan participants or beneficiaries, provided they are memorialized at the same level of formality as the employer chose in promulgating the welfare plan in the first place. *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996) (citing *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85 (1995)).

SUMMARY JUDGMENT STANDARD

When both parties to an action have moved for summary judgment, each party's motion is examined on its own merits. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citations omitted). With respect to each motion, it is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute

---

[1] 29 U.S.C. § 1022(a) requires employers to distribute SPDs describing the plan's benefits to their employees. *See, e.g., Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003) (explaining the statute's requirements). The SPD must be written in a manner calculated to be understood by the average plan participant, must be sufficiently accurate and comprehensive as to the participants' and beneficiaries' rights and obligations under the plan, and must contain the plan's eligibility requirements for benefits as well as "the circumstances which may result in disqualification, ineligibility or denial or loss of benefits." *Burke*, 336 F.3d at 110 (citing 29 U.S.C. § 1129(b)). "The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)–(2). Such evidence must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nevertheless, the non-movant cannot oppose a properly-supported summary judgment motion with mere assertions or "[s]tatements devoid of specifics, but replete with conclusions." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

XEROX'S MOTION FOR SUMMARY JUDGMENT

As indicated above, the Vollmers allege two causes of action: an ERISA "denial of benefits" claim pursuant to 29 U.S.C. § 1132(a)(1)(B), and an ERISA breach of fiduciary duties claim pursuant to 29 U.S.C. § 1132(a)(3). Xerox has moved for summary judgment on the grounds that (1) both of the Vollmers' claims are time-barred, and (2) even if the claims are not time-barred, they lack merit because "the governing plan document contained no unconditional promise of non-contributory lifetime benefits . . . ." Def. Mem.

8

in Support, 1–2, Sept. 24, 2021, ECF No. 44-1. The Vollmers oppose the motion, stating that Xerox's arguments present a "remarkable combination of sophistry and chutzpah." Pl. Mem. in Opp., 1, Nov. 5, 2021, ECF No. 49.

With respect to Xerox's motion for summary judgment, the Vollmers are the non-movants who will bear the burden of proof at trial. Therefore, Xerox satisfies "its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry" the Vollmers' burden of proof at trial. *Mitchell v. Carriero*, No. 6:08-CV-06270 CJS, 2011 WL 2447958, at *1 (W.D.N.Y. June 15, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). For ease of discussion, Xerox's arguments are taken out of order.

The Vollmers' Claim for Violation of Fiduciary Duties is Time-Barred

The Vollmers' claim that Xerox breached its fiduciary duties is authorized by 29 U.S.C. § 1132(a)(3), "which permits a plan participant or beneficiary to . . . obtain . . . appropriate equitable relief to redress . . . violations or to enforce any provisions of ERISA or the terms of the plan." Compl. at ¶ 95. Specifically, the Vollmers maintain that they are entitled to equitable relief because, at the time of the announcement of the ERP to potential participants in 1986, Xerox "breached their fiduciary duties in misrepresenting the terms of the Old Plan with respect to the reservation of rights to require contributions by participants who elected [early] retirement . . . ." Compl. at ¶ 102.[2] In addition, the Vollmers argue that Xerox "violated their disclosure obligations by failing to timely furnish

---

[2] *See also* Pl. Mot. for Summ. J., 27, Sept. 24, 2021, ECF No. 45-1 ("In offering the ERP, Xerox went out of its way to set up informational sessions . . . [and n]ot once did Xerox even suggest that if it deemed the ERP promises too costly, it could shave the benefits.").

9

employees eligible to retire pursuant to the ERP and their spouses with an SPD that apprised them that Xerox reserved the right to require contributions by participants who elected retirement under the ERP." Compl. at ¶ 104.[3] The Vollmers and other members of the putative class suffered harm from these alleged misrepresentations and omissions "in that they forewent ongoing employment, future advancement and earnings, future contributions to their 401(k) accounts [etc.] . . . in exchange for the benefits under the ERP, including lifetime, non-contributory retiree health benefits . . . ." Compl. at ¶ 105. Xerox's principal argument is that this claim is time-barred by 29 U.S.C. § 1113(1).

*Legal Principles*

With respect to breach of fiduciary duty claims, ERISA provides that:

No action may be commenced ... with respect to a fiduciary's breach of any responsibility, duty, or obligation ... after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. In other words, "all plaintiffs must file suit no later than six years after the breach, but a plaintiff who acquires 'actual knowledge of the breach' cannot sleep on his rights; he must bring his claim within three years of acquiring 'actual knowledge.'" *In*

---

[3] *See also*, Pl. Mot. for Summ. J. at 28 ("When Xerox offered the ERP, Defendants violated their disclosure obligations by failing to furnish ERP offerees with an SPD apprising them that Xerox reserved the right to require contributions by participants who elected retirement under the ERP.").

*re Citigroup Erisa Litig.*, 104 F. Supp.3d 599, 610 (S.D.N.Y. 2015), *aff'd sub nom.*

*Muehlgay v. Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016) (quoting *Leber v. Citigroup*

*401(k) Plan Inv. Comm.*, No. 07cv9329, 2014 WL 4851816, at *3 (S.D.N.Y. Sept. 30,

2014). In cases involving "fraud or concealment," however, "this six year period is tolled

until the plaintiff discovers, or should with reasonable diligence have discovered, the

breach." *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012).

As the Supreme Court recently affirmed, § 1113(1)'s six-year limitations period is

a statute of repose, but § 1113(2)'s three-year limitations period is a traditional statute of

limitations. *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020).

Though in a different context, the Second Circuit has explained the distinction between

statutes of limitation and repose as follows:

> [S]tatutes of limitations bear on the availability of remedies and, as
> such, are subject to equitable defenses . . ., the various forms of
> tolling, and the potential application of the discovery rule. In contrast,
> statutes of repose affect the availability of the underlying right: That
> right is no longer available on the expiration of the specified period
> of time. In theory, at least, the legislative bar to subsequent action is
> absolute, subject to legislatively created exceptions . . . set forth in
> the statute of repose.

> Calvin W. Corman, *Limitation of Actions*, § 1.1, at 4–5 (1991). Therefore, a
> statute of repose begins to run without interruption once the necessary
> triggering event has occurred, even if equitable considerations would
> warrant tolling or even if the plaintiff has not yet, or could not yet have,
> discovered that she has a cause of action.

*P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (citing, *inter alia*,

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co., Inc.* 32 F.3d 697, 704 (2d Cir.1994)).

*Application*

The Vollmers allege that Xerox breached its fiduciary duty to potential ERP retirees by misrepresenting the terms of the Old Plan with respect to Xerox's reservation of the right to require contributions by participants who elected early retirement, and failing to "timely" disclose in the SPD (i.e., omitting) the fact that Xerox reserved the right to require contributions by participants who elected retirement under the ERP. Compl. at ¶ 102–104. The harm that the Vollmers allege is, in essence, that the retirees decided to forego further employment with Xerox and accept the ERP benefits instead. Compl. at ¶ 105.

In responding to Xerox's argument that this claim is time-barred under § 1113's statute of repose, the Vollmers maintain that "[t]he last act to constitute the breach occurred, at earliest, in October 2018, when Xerox announced the contribution requirements." Pl. Mem. in Opp., 20, Nov. 5, 2011, ECF No. 49. This position, however, is not consistent with the nature of the claim the Vollmers have pled. The Vollmers' complaint clearly alleges that the fiduciary breach occurred prior to their acceptance of the ERP benefits: i.e., "when [Xerox] sent [the Vollmers and other putative class members] communications offering to those who elected early retirement under the ERP . . . lifetime coverage that was non-contributory under the retiree medical and dental plans in effect prior to the changes announced in early 1986." Compl. at ¶ 101. The Court's conclusion in this respect is supported by the harm the Vollmers allege: i.e., that the Vollmers and other putative class members actually accepted the ERP benefits, including participation in the Old Plan, instead of continuing their employment. Compl. at ¶ 105.

Based on the pleadings, then, "the date of the last action which constituted a part of the breach or violation" could have been, at the latest, the date that Mr. Vollmer and the other putative class members retired and began receiving the ERP benefits. This would have been the last date the Xerox could have "cured" their omission, as well. Once the Vollmers and other putative claimants retired, it was not possible to fix the alleged misrepresentation or omission by providing revised information, because the retirees' choice had already been made. To find otherwise would require that the Court understand the term "cure" in § 1113(1)(b) in the sense of "to find a remedy" rather than "to fix." *See, e.g., Olivo v. Elky*, 646 F. Supp.2d 95, 102 (D.D.C. 2009) (citing *Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1307 (7th Cir.1998). Because it is always possible to remedy a breach, such a reading would extend a fiduciary's liability indefinitely, which would be at odds with the legislature's intent in including a statute of repose in the first place. *Id.*

Further, the Vollmers' suggestion that the present matter is a "case of fraud or concealment" under § 1113, which would entitle them to six years from the date of discovery of the breach to file their action, is also without merit. Pl. Mem. in Opp. at 20–21. To demonstrate "fraud or concealment," a plaintiff must show that the fiduciary:

> (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty.

*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001) (emphasis in original) (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001) (Mansmann, *J.*, concurring); *Black's Law Dictionary* (Rev. 4th ed. 1968)). The Vollmers

have not met that burden.

In response to a motion for summary judgment, a plaintiff alleging "fraud" under § 1113 must come forward with evidence establishing each of the following elements: (1) a knowing or intentional (2) misrepresentation or omission of a material fact (3) to induce an employee/beneficiary to act to his detriment. *Kirk v. Liberty Mut. Ins. Co.*, 28 F. Supp.2d 696, 700 (D. Conn.), *aff'd*, 164 F.3d 618 (2d Cir. 1998) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992)). In the present case, however, the Vollmers expressly argue that at the time that the Old Plan materials and the ERP benefits were communicated, Xerox plan administrators believed that they were promising employees lifetime, non-contributory benefits. Compl. at ¶ 62; Pl. Mem. in Opp. at 4 (listing documents that induced Mr. Vollmer's belief that he was being offered lifetime, non-contributory benefits, and stating that Mr. Vollmer's belief was shared by Xerox's then-plan administrator, Evan Dean, as well as the accounting department and later plan administrators). In other words, the Vollmers argue in effect that Xerox made an agreement in good faith to offer lifetime, non-contributory benefits at the time the ERP was offered, and only years later decided to breach the agreement. This position precludes them from invoking "fraud" under § 1113 because any misrepresentations or omissions at the time Mr. Vollmer and other putative class members accepted the ERP benefits could not have been "knowing or intentional."

With respect to allegations of "concealment" under § 1113, plaintiffs must demonstrate "that the defendant committed either: (1) a 'self-concealing act' – an act committed during the course of the breach that has the effect of concealing the breach

from the plaintiff; or (2) 'active concealment' – an act distinct from and subsequent to the breach intended to conceal it." *Osberg v. Foot Locker, Inc*., 862 F.3d 198, 210–11 (2d Cir. 2017) (quoting *Caputo*, 267 F.3d at 189) (internal quotation marks omitted). Again, the Vollmers do not here allege that the Xerox plan administrators committed a "self-concealing act" at the time they communicated the Old Plan SPD and the ERP benefits. Instead, as outlined in the previous paragraph, the Vollmers clearly allege that the plan administrators at the time the ERP was offered believed the plan to involve lifetime, non-contributory benefits. Thus, the factual basis for their claims is materially different from the facts in the cases of both *Osberg* and *Caputo*, in which company administrators were indisputably aware that the information they were providing beneficiaries was false or misleading in order to mask their intentions to decrease benefit levels and required payouts. *See, e.g., Caputo*, 267 F.3d at 184–186 (describing the misrepresentations made by Pfizer senior executives to their employees to conceal plans for upcoming programs to incentivize early retirement). Neither have the Vollmers presented any evidence of "active concealment" by Xerox executives after the fact.

Because the breach of fiduciary duty that the Vollmers allege occurred far more than six years ago, and because they have failed to demonstrate fraud or concealment on Xerox's part, the Vollmers' claim for breach of fiduciary duty is time-barred pursuant to the statute of repose in 29 U.S.C. § 1113(1). Moreover, because the claim is time-barred, the Court need not consider its merits.

<u>The Vollmers' Denial of Benefits Claim is not time-barred</u>.

"Denial of benefits" claims are authorized by 29 U.S.C. § 1132(a)(1)(B), which provides that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Vollmers allege that Xerox denied them their rightful benefits under the terms of the Old Plan when, despite the Old Plan's promise of lifetime, non-contributory benefits, Xerox required Old Plan participants to begin paying a monthly premium in order to retain their medical and dental coverage. Compl. at ¶ 92–93.

Xerox maintains that this claim is time-barred, because the Vollmers first became aware no later than 2010 that Xerox reserved its right to amend or terminate benefits under the Old Plan. In 2010, Mr. Vollmer sent a letter to Xerox specifically requesting a "current" copy of the Old Plan's medical and dental coverages. Def. Ex. 14, VOLLMER_0001574, Sept. 24, 2021, ECF No. 44-17. Xerox responded by mailing Mr. Vollmer the 2010 Annual Enrollment Guide, which "constitute[d] a Summary of Material Modifications" of the benefit options to the Old Plan. Def. Ex. 16, VOLLMER_001707, Sept. 24, 2021, ECF No. 44-19. Among other things, the guide indicated that Xerox "in its sole discretion, reserves the right to amend or terminate the plans or programs at any time for any reason." *Id.* Xerox claims that this was a sufficient repudiation of the Vollmers' belief that the plan could not be amended.

*Legal Principles*

Because "ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Emp. Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir. 1983). In New York, "the six-year limitations period prescribed by New York's C.P.L.R. § 213 controls." *Id.*

The Second Circuit has held that a plaintiff's cause of action under ERISA accrues when a plan "clearly and unequivocally repudiates" the plaintiff's claim for benefits. *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 50 (2d Cir. 1999) (citations omitted). The "clear and unequivocal" repudiation typically occurs "when a plan denies a beneficiary's formal application for benefits," but it may also occur "upon [other forms of] clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." *Testa v. Becker*, 910 F.3d 677, 682 (2d Cir. 2018) (quoting *Carey*, 210 F.3d at 47, 49). Courts in this Circuit have routinely held that the distribution of an SPD that "plainly and accurately" describes relevant amendments to a plan may constitute one such other form of a clear repudiation of benefits. *Testa,* 910 F.3d at 682. *See also Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*, 285 F. App'x 802, 804 (2d Cir. 2008).

*Application*

The Vollmers maintain that their claim is not time-barred because the 2010 guide did not "clearly repudiate" their claims for lifetime non-contributory medical and dental insurance, and because they filed their claims in this Court within the contractual

limitations period of "180 days after the date of the [PAC]'s determination of the[ir] appeal." Pl. Mem. in Opp. at 9. They maintain that Xerox cannot be said to have repudiated their claim for lifetime, non-contributory benefits until Xerox sent the Vollmers a letter in October 2018 notifying them of their obligation to begin paying 50% of the premiums of their medical and dental coverages. The Court agrees.[4]

According to Black's Law Dictionary, a repudiation is "a contracting party's words or actions that indicate an intention not to perform the contract in the future." REPUDIATION, *Black's Law Dictionary* (11th ed. 2019). A "clear repudiation" of a party's claim for benefits must therefore involve an unambiguous expression of the intention not to provide particular benefits, rather than merely leaving the door open for future changes. *See, e.g., Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 273 (6th Cir. 2012) (concluding that an amended SPD in which the defendants "spelled out the specific benefit changes" is a clear repudiation, while an amended SPD with reservation of rights provisions that "did not result in any immediate changes in benefits" is not). Indeed, even if a plan sponsor were to reserve the right to change its employee welfare plan, a plaintiff has no cause for complaint until he is notified of a change to benefits to which he has some colorable claim, since it cannot be known earlier how the plan documents will be interpreted by the plan administrators. *See, e.g., Levin v. Raynor*, No. 03 CIV. 4697 (GBD), 2004 WL 2937825, at *8 (S.D.N.Y. Dec. 17, 2004) (citing *Martin v. Constr.*

---

[4] The Vollmers also contend that Xerox should be judicially estopped from arguing that the reservation of rights language in the 2010 enrollment guide was grounds for invoking the statute of limitations, because Xerox has previously taken the opposite position in litigation in 2009. Pl. Mem. in Opp. at 10 (citing *Coriale v. Xerox Corp.*, 775 F. Supp.2d 583 (W.D.N.Y. 2011), aff'd, 490 F. App'x 387 (2d Cir. 2012)). However, there is no need to address the judicial estoppel argument because the Court agrees with the Vollmers' argument regarding repudiation.

*Laborer's Pension Tr. for S. California*, 947 F.2d 1381, 1386 (9th Cir. 1991); *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir.1978)).

Therefore, even assuming that Xerox properly reserved the right to make changes to the plan design, and plainly communicated that reservation of rights to Plaintiffs through the 2010 enrollment guide, that language was not a "clear repudiation" of the specific benefit that the Vollmers claim they were denied: i.e., the right to receive medical and dental insurance coverage without contribution. Compl. at ¶ 92. In light of the decades during which they received such health insurance coverage without a corresponding premium payment, it cannot be said that a generic reservation of rights signified a clear intent to begin requiring the payment of premiums in order to retain the coverage in the future. On the contrary, the clear repudiation of the benefit of non-contributory medical and dental insurance did not come until Xerox's letter in October 2018 notifying the Vollmers that they would have to pay 50% of their medical and dental coverages. Accordingly, the Court finds that the Vollmers' claim for denial of benefits pursuant to 29 U.S.C. 1132(a)(1)(B) is not time-barred.

<u>Xerox Has Not Demonstrated Entitlement to Judgment as a Matter of Law on the "Denial of Benefits" Claim</u>.

Lastly, the Court considers Xerox's claim that it is entitled to summary judgment on the Vollmers' denial of benefits claim because it never promised that lifetime medical and dental benefits through the Old Plan would be non-contributory. Xerox states that "[t]he terms of coverage under the Old Plan were set forth in a document entitled 'You and Xerox' ["1980 SPD"] that was distributed to Old Plan participants in 1980, and which was identified as the Summary Plan Description for the Old Plan . . . ." Def. Mem. in

Support at 3. On the other hand, in their complaint, as well as in their response to Xerox's motion for summary judgment, the Vollmers maintain that the relevant document for the Old Plan at the time Mr. Vollmer retired and accepted the ERP benefits was a document distributed in 1984 entitled *Xerox Medical and Dental Plans for Retired Employees* (1984 SPD). Pl. Mem. in Opp., 8, Nov. 5, 2021, ECF No. 49. Pl. Ex. 22, 44-22, Sept. 24, 2021.

*Legal Principles*

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has satisfied his or her burden, "the burden of production shifts to the non-movant to bring forth evidence showing that a genuine factual dispute exists." *Alzawahra v. Albany Med. Ctr.*, 546 F. App'x 53, 54 (2d Cir. 2013) (citation omitted). A dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

In order "to avoid summary judgment on an ERISA contractual vesting claim in this circuit, plaintiffs need only identify 'specific written language that is reasonably susceptible to interpretation as a promise to vest.'" *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 97 (2d Cir. 2001) (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)). The plaintiff is not required to point to unambiguous language to support his or her claim, but must identify "written language capable of reasonably being

20

interpreted as creating a promise" to vest benefits. *Schonholz*, 87 F.3d at 78.

*Application*

After a thorough review of the voluminous record in this case, the Court finds that the parties' disagreement as to what constitutes the operative document for the Old Plan remains a "genuine dispute of a material fact" precluding summary judgment.

Xerox believes that the 1980 SPD is the relevant document governing the denial of benefits claim. The 1980 SPD stated, in pertinent part, that "[s]ince Xerox plans, policies and procedures change from time to time, any conflicts between them and this handbook must, of necessity, be resolved in favor of the current plans, policies, and procedures." Def. Ex. 7, VOLLMER_0000807, Sept. 24, 2021, ECF No. 44-7. Xerox maintains that the Old Plan was restated in 2003 and 2016, and indicated in both instances that Xerox reserved the right to make changes to the plan design, and that Xerox "in its sole discretion, determines the annual amount of credit the Company provides toward the cost of medical benefits." Def. Mem. in Support at 4. *See also, e.g.,* Def. Ex. 11, XER-00013234, (§ 7.1, "Right to Amend or Terminate the Plan"), Sept. 24, 2021, ECF No. 44-14.

The Vollmers believe that the 1984 SPD is the relevant document governing the denial of benefits claim. In support of their position, the Vollmers have submitted several pieces of evidence. Of particular importance to the present analysis is the declaration of the former plan administrator for the Old Plan, Lawrence Becker,[5] which was prepared for litigation in 2014 involving ERP retirees and the Old Plan: *Bell v. Xerox*, 52 F. Supp.3d

---

[5] At oral argument, counsel for Xerox acknowledged that such a declaration could be considered as a non-hearsay admission of a party opponent under Rule 801 of the Federal Rules of Evidence.

498 (W.D.N.Y. 2014). *See* Pl. Ex. 21, Sept. 24, 2021, ECF No. 46-21. In that declaration,

Becker testified, in pertinent part:

> 5. The Xerox Medical Plan and the Xerox Dental Plan provide health and dental benefits for eligible formerly-salaried employees of Xerox who retired or became eligible to retire (i.e. had attained age 55 with at least ten years of service) prior to January 1, 1989. Benefits provided under the Xerox Medical Plan and Xerox Dental Plan were initially provided under one plan, created in 1975, that included both medical and dental coverage. The Xerox Medical Plan is now referred to at Xerox as the "Old Plan." . . . .

> 6. In accordance with ERISA, Xerox periodically distributed summary plan descriptions ("SPDs") and open enrollment materials to Participants in the Old Plan to inform them about their benefits as well as any changes in that Plan's benefits. The Old Plan has been amended from time to time since its inception . . . .

> 7. The Old Plan was amended in 1984 at which time an SPD was provided to plan participants. A true and correct copy of the 1984 SPD, which is entitled "The Xerox Medical and Dental Plans for Retired Employees," is attached as Exhibit C.

Pl. Ex. 21 at ¶ 5–7. As confirmation that the 1984 SPD contains the operative benefits

language for ERP retirees, the Vollmers note that the PAC based its decision denying

their 2018 administrative claim for payment of their medical and dental premiums, in part,

on its review of "the 1984 Summary Plan Description (SPD) which at [the time of Mr.

Vollmer's retirement] served as the Plan's only plan document." Def. Ex. 28,

VOLLMER_0001887, Sept. 24, 2021, ECF No. 44-31.

Xerox maintains that Mr. Becker's statement, and the letter explaining the PAC's

denial of the Vollmers' administrative claim, need not preclude summary judgment on the

denial of benefits claim in Xerox's favor, since, according to Xerox, Becker and the PAC

administrator were mistaken as to the relevant document. That may or may not be so.

But Xerox's theory is not so convincing as to put the question beyond dispute as to

Becker's and the PAC's error. If multiple individuals charged with the duty of administering the Old Plan recently reached the conclusion that the 1984 SPD is the relevant plan document, the Court finds that the issue is not so clear that no reasonable trier of fact could find for the non-movants, the Vollmers. *See, e.g., Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.").

THE VOLLMERS' MOTION FOR SUMMARY JUDGMENT

As indicated above, the Court agrees with Xerox that the Vollmers' claim for a breach of fiduciary duties pursuant to 29 U.S.C. § 1129(a)(3) is barred by the applicable statute of repose in § 1113(1). However, the Court disagrees with Xerox's argument that the Vollmers' denial of benefits claim is also time-barred, and with Xerox's argument that it is entitled to judgment as a matter of law on the denial of benefits claim. The Court turns, then, to a consideration of whether the Vollmers have demonstrated that they are entitled to summary judgment on their denial of benefits claim, or whether that claim should proceed to trial.

As previously stated, the Vollmers believe that the 1984 SPD is the relevant plan document defining Old Plan benefits for ERP retirees. Although Xerox does not concede this to be the case, Xerox maintains that even if the Vollmers are right, Xerox is still entitled to summary judgment. The Vollmers disagree, and identify the language that they believe entitles them to lifetime, non-contributory medical and dental coverage:

> The 1984 Old Plan SPD . . . promis[ed]: "As a retiree, you and your spouse (at the time you retire) will participate in the Xerox Medical and Dental Plan *for the rest of your lives*," and that "In the event of your death, your spouse will have coverage *for the rest of his or her lifetime*."

Pl. Mem. in Opp., 19 n. 10, Nov. 5, 2021, ECF No. 49; see also Pl. Ex. 22 at VOLLMER_0000179.

In addition to the 1984 SPD,[6] the Vollmers also point to several other documents that include contemporaneous statements by Xerox that the Vollmers believe to form part of Xerox's promise not only to provide lifetime benefits, but lifetime *non-contributory* benefits, as well. Pl. Mem. in Opp. at 10. For instance, the Vollmers note that the October 1986 letter from Xerox to Mr. Vollmer describing the ERP referred him to the 1984 SPD, and stated that if he elected to participate in the enhanced retirement program he would be "covered by the retiree medical and dental plans in effect prior to the changes announced in early 1986." Pl. Ex. 34, 2, Sept. 24, 2021, ECF No. 46-34.

Further, the Vollmers have submitted a workbook entitled "Early Retirement Options for Xerox Employees," which was distributed under a cover letter from Evan Dean, who was the plan administrator in 1986. The workbook was developed for the company-sponsored workshops for the enhanced retirement program, which were run by Xerox's third-party benefits consultant, APEX. It stated that eligible early retirees would be covered under the Old Plan, which "is non-contributory after your retirement for you and your dependents." Pl. Ex. 39, 11, Sept. 24, 2011, ECF No. 46-39. The "Supplemental

---

[6] At oral argument on January 20, 2022, counsel for the Vollmers conceded that the 1984 SPD itself did not contain language promising *non-contributory* medical and dental coverage, but that the 1984 SPD in conjunction with various other statements made to the Vollmers – both in writing and orally – together form a promise for lifetime, non-contributory benefits.

Q & A" to this workbook also stated that eligible early retirees would be "covered by the original retiree medical and dental plans," and that "[t]he spouse has lifetime coverage under the retiree medical/dental plans." Pl . Ex. 44, 4 Pl . Ex. 44, 4–5, ECF No. 46-44, Sept. 24, 2021. Handouts from the workshops, also submitted by the Vollmers, show that one summary of the Old Plan medical and dental care benefits included language promising "[l]ifetime coverage for retiree and spouse," and another listed the "Retiree Premium Contributions" as "None." Pl. Ex. 47, 14–16, Sept. 24, 2021, ECF No. 46-47; Pl. Ex. 42, 107, Sept. 24, 2021, ECF No. 46-42. Lastly, the Vollmers have submitted a copy of the confirmation letter that Mr. Vollmer received from a Xerox benefits specialist after he elected to participate in the enhanced retirement program, which again stated that "[l]ifetime coverage is provided for both retiree and spouse . . . ." Pl. Ex. 50, 1, Sept. 24, 2021, ECF No. 46-50.

First, the Court notes that the Second Circuit "has determined that informal communications are not accorded the status or weight of SPDs." *Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp.2d 413, 426 (S.D.N.Y. 2003) (citing *Moore*, 856 F.2d at 492–493). For this reason, the Court finds that the workbook and handouts put together by APEX, and distributed before or during the ERP question-and-answer sessions, were not sufficiently "formal" to be considered as part of the contractual agreement between Xerox and Old Plan participants and beneficiaries regarding the terms of the Old Plan. Neither were any oral statements or promises made by either APEX consultants or Xerox personnel part of the agreement. *See, e.g.*, *Korman v. Consol. Edison Co. of New York*, 915 F. Supp.2d 359, 367 (E.D.N.Y. 2013) (citing *Marin Gen. Hosp. v. Modesto & Empire*

25

*Traction Co*., 581 F.3d 941, 943–44 (9th Cir. 2009) (holding that action against an ERISA plan administrator based on his alleged oral promise to pay for the majority of beneficiary's medical expenses was not a "colorable claim" under § 502(a)(1)(B) because dispute concerned the terms of the alleged oral promise, not of the ERISA plan itself)). Indeed, "[w]ere all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan . . . . [p]redictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created." *Moore*, 856 F.2d at 492

Further, the Vollmers have failed to demonstrate that, even if the 1984 SPD is the operative plan document, they are entitled to summary judgment on their denial of benefits claim. A commitment to vest welfare benefits "is not to be inferred lightly." *See Sprague v. General Motors Corp*., 133 F.3d 388, 400 (6th Cir.), *cert. denied* 524 U.S. 923 (1998). In addition, principles of contract law counsel against interpreting silence in the 1984 SPD to be a promise of such import. *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 442 (2015) ("when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life"); *Joyce v. Curtiss-Wright Corp*., 171 F.3d 130, 135 (2d Cir. 1999) (stating courts "will not infer a binding obligation to vest benefits absent some language that itself reasonably supports that interpretation.").

As counsel for the Vollmers admitted at oral argument, there is no language within the four corners of the 1984 SPD promising that the lifetime benefits provided by the Old Plan would be non-contributory. Moreover, Becker's declaration suggests the existence of a more comprehensive plan document, when it states at paragraph 7 that "[t]he Old Plan was amended in 1984 at which time an SPD was provided to plan participants." Pl. Ex. 21 at ¶ 7. Notwithstanding the Vollmers' claim that the 1984 SPD was actually acting as the plan document, Becker's phrasing suggests that the Old Plan itself is a separate document or collection of documents from the 1984 SPD. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011) ("the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)."). Consequently, the Court declines to find the language in the 1984 SPD dispositive of the denial of benefits claim, and the Vollmers' motion for summary judgment on the denial of benefits claim is denied.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Xerox's motion for summary judgment [ECF No. 44] is granted in part, and denied in part; and it is further

ORDERED that the Vollmers' motion for summary judgment [ECF No. 45] is denied; and it is further

ORDERED that the Vollmers' claim against Xerox pursuant to 29 U.S.C. § 1129(a)(3) for a breach of fiduciary duty is dismissed; and it is further

ORDERED that the parties are directed to contact Chambers to schedule a pretrial conference.

SO ORDERED.

Dated:          February 14, 2022
                Rochester, New York

ENTER:

CHARLES J. SIRAGUSA
United States District Judge